[Crim. No. 22615. Sept. 8, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ELLIOT CORNACE McKENZIE, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Neil Rosenbaum, Deputy State Public Defender, for Defendant and Appellant.

Jeff Brown, Public Defender (San Francisco), Peter G. Keane, Chief Attorney, Wilbur D. Littlefield, Public Defender (Los Angeles), and Ephriam Margolin as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

Cecil Hicks, District Attorney (Orange), Michael R. Capizzi, Assistant District Attorney, and William W. Bedsworth, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**MOSK, J.**—The sole issue on this appeal is whether reversal is appropriate after defense counsel expressly refuses to actively participate in his client's trial. Counsel here attempted to justify his action on the ground that certain trial rulings made it impossible for him to effectively represent his client. Although we are extremely reluctant to appear to reward such tactics, we nevertheless conclude that reversal is necessary because, on this record, the defendant was unquestionably deprived of the effective assistance of counsel.

Defendant appeared in municipal court for arraignment on charges of burglary, assault with a deadly weapon, rape, forcible oral copulation, and robbery. The complaint also contained allegations of great bodily injury, use of a deadly weapon, and two prior felony convictions. Despite the magistrate's careful admonition about the dangers of self-representation, defendant elected to waive his right to be represented by an attorney. The record indicates that defendant fully understood the nature of the charges against him and the ramifications of his decision. Reluctantly, the magistrate permitted him to represent himself. (*Faretta* v. *California* (1975) 422 U.S. 806, 834-835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525].) Defendant then pleaded not guilty to each charge. Nevertheless, two days later he confessed at length to the charges.

Following this confession, defendant indicated his desire to plead guilty. At a special superior court hearing on the plea, however, defendant asked the court to commit him to a state mental hospital. The judge carefully explained that a guilty plea would not necessarily result in such a commitment.[1] Defendant chose to reconsider entering a plea and to defer any decision on the matter until the preliminary hearing.

---

[1]The judge detailed the possible ways in which defendant might be sent to a state hospital: i.e., on a finding of incompetency, a finding of not guilty by reason of insanity, or a determination that he was a mentally disordered sex offender. The court also explained the procedures involved in a plea of not guilty by reason of insanity and noted that if the defendant so chose, such a plea could be entered in a subsequent superior court proceeding.

At the preliminary hearing, defendant represented himself. He stated his intent to plead not guilty by reason of insanity and was informed that he could only enter that plea in superior court. The hearing proceeded with the two victims testifying about defendant's crimes. Defendant asked them no questions and presented no evidence; the magistrate accordingly held him to answer on all charges. After arraigning defendant on the felony information, the superior court initiated proceedings to determine defendant's competency to stand trial. (Evid. Code, § 730; Pen. Code, § 1368.) The court specially appointed the public defender to represent defendant in those proceedings. On the basis of a psychiatrist's report, the court found that defendant was competent to stand trial. When asked whether he could afford to hire counsel, defendant refused to answer; as a result, the court assigned the public defender to represent him. At his arraignment, defendant failed to make an intelligible response when requested to enter pleas. The court, on its own motion, entered pleas of not guilty.

Two weeks later, the public defender moved to terminate his appointment. He argued that (1) defendant's right of self-representation, once invoked in municipal court, continued in effect in superior court; (2) there had been no adequate ground to terminate this self-representation; and (3) defendant's actions indicated he rejected representation by appointed counsel. When the court asked defendant whether he still wished to represent himself, he made no reply. Expressing solicitude for defendant's right to the assistance of counsel in the absence of a renewed waiver and doubts concerning defendant's capacity to represent himself, the court denied the public defender's motion to withdraw. After reviewing a second psychiatrist's report, the court ordered another competency trial pursuant to Penal Code section 1368. Because of his disruptive outbursts, defendant had to be removed from the courtroom during that proceeding. Again, he was found competent to stand trial.

At his next court appearance, defendant again refused to respond when asked if he wanted counsel. The public defender was reappointed to represent defendant. In ordering the appointment, the court emphasized its concern for defendant's right to the effective assistance of counsel and expressed its unwillingness to infer a continuing waiver of the right to counsel merely from defendant's silence.

The public defender subsequently moved to set aside the information (Pen. Code, § 995) on the ground that defendant was denied the effective assistance of counsel at the preliminary hearing because the witnesses against him were not cross-examined. Alternatively, defense counsel sought a new preliminary hearing on the ground that otherwise he would be unable to effectively prepare for trial. The court denied both motions and ordered

that the case proceed to trial. The defense later moved for a continuance (Pen. Code, § 1050) to allow counsel to seek appellate review of the previous denial of the section 995 motion. In support of this motion, counsel filed an *in camera* declaration detailing possible defenses that might be available to defendant depending on the outcome of cross-examination at a new preliminary hearing. The court denied the continuance motion, noting that the public defender could seek a stay from the appellate court.[2]

Before voir dire began, the public defender in chambers renewed his motion for a continuance. He thoughtfully articulated for the record the reasons why he was unwilling to proceed to trial. He stated that he had not been able to develop a viable defense theory or trial strategy because of the lack of a thorough preliminary hearing and because of defendant's failure to cooperate or communicate with him. Citing *People* v. *Locklar* (1978) 84 Cal.App.3d 224 [148 Cal.Rptr. 322], and American Bar Association, Code of Professional Responsibility, Disciplinary Rule DR 6-101 (A) (2),[3] he flatly refused to participate in the trial beyond appearing in court and sitting next to his client.

The judge acknowledged defense counsel's dilemma and attributed it to defendant's refusal to cooperate in his own defense, but declined to further delay the trial. He remarked: "[I]t seems to me that all of your problems, which are understandable, are created by the defendant who understands and is able to cooperate and, in effect, he is waiving a lot of rights that the Constitution affords him. But it's his right to waive those protections. And I find that that is what he is doing. [¶] So we will proceed as best we can."

As jury selection was about to begin, defendant threw himself on the floor and screamed. He was removed from the courtroom and remained absent throughout the remainder of his trial.

True to his word, the public defender did not participate in the trial of his client. He did not ask questions or exercise challenges during jury selection, nor did he make an opening or closing argument to the jury. He did not cross-examine any of the prosecution's witnesses or object to the admission of any of the prosecution's evidence.[4] After the jury's predictable conviction of defendant, counsel remained completely passive at the sen-

---

[2]Apparently, defense counsel made no effort to pursue this option.

[3]DR 6-101 (A) (2) provides that a lawyer shall not "handle a legal matter without preparation adequate in the circumstances." (ABA Code of Prof. Responsibility [hereafter CPR of ABA], DR 6-101 (A) (2).)

[4]Counsel's participation was limited to the submission of proposed jury instructions on behalf of the defendant. Apparently these had been submitted prior to counsel's announcement of his refusal to participate.

tencing proceedings. His participation was limited to a reiteration of his view that he was unable to render effective assistance without the benefit of a second preliminary hearing.

■ The Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution guarantee criminal defendants the right to be represented by counsel at trial. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335, 342-345 [9 L.Ed.2d 799, 803-805, 83 S.Ct. 792]; *Argersinger* v. *Hamlin* (1972) 407 U.S. 25, 37 [32 L.Ed.2d 530, 538, 92 S.Ct. 2006].) ■ "It has long been recognized that the right to counsel is the right to the effective assistance of counsel. See *Reece* v. *Georgia,* 350 U.S. 85, 90 (1955); *Glasser* v. *United States,* 315 U.S. 60, 69-70 (1942); *Avery* v. *Alabama,* 308 U.S. 444, 446 (1940); *Powell* v. *Alabama,* 287 U.S. 45, 57 (1932)." (*McMann* v. *Richardson* (1970) 397 U.S. 759, 771, fn. 14 [25 L.Ed.2d 763, 773, 90 S.Ct. 1441]; *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 612 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333].) Therefore, the courts have required that defense counsel meet the standard of representation to be expected of "a reasonably competent attorney acting as a diligent, conscientious advocate." (*People* v. *Pope* (1979) 23 Cal.3d 412, 424 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) The foregoing implies a duty of the trial judge to assure, to the extent possible under all the circumstances, that defendant receives such diligent advocacy. Therefore, the question presented is whether counsel's actions, coupled with the trial court's inaction, resulted in the denial of defendant's fundamental right to effective assistance.

I

■ We first examine the obligations of the trial judge to assure that a criminal defendant is afforded a bona fide and fair adversary adjudication. "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused." (*Glasser* v. *United States* (1942) 315 U.S. 60, 71 [86 L.Ed. 680, 699, 62 S.Ct. 457]; see also *Powell* v. *Alabama* (1932) 287 U.S. 45, 52 [77 L.Ed. 158, 162, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Davis* (1973) 31 Cal.App.3d 106, 110 [106 Cal.Rptr. 897]; Schwarzer, *Dealing with Incompetent Counsel—The Trial Judge's Role* (1980) 93 Harv.L.Rev. 633, 639, fn. 27, 649.)

In order to implement this duty, the trial judge is vested with both the statutory and the inherent power to exercise reasonable control over all proceedings connected with the litigation before him. (*Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274]; Code Civ. Proc., § 128.) The court has the authority " 'to take whatever steps [are] necessary to see that no conduct on the part of any person obstruct[s]

the administration of justice' " (*People* v. *Jones* (1979) 95 Cal.App.3d 403, 407 [157 Cal.Rptr. 51]), to "maintain 'the dignity and authority of the court' [citation] and to summarily punish for acts committed in the immediate view and presence of the court when they impede, embarass or obstruct it in the discharge of its duties [citations]." (*Mowrer* v. *Superior Court* (1969) 3 Cal.App.3d 223, 230 [83 Cal.Rptr. 125].) It has further been noted that the trial judge "has the responsibility for safeguarding both the rights of the accused and the interest of the public in the administration of criminal justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial." (ABA Standards for Criminal Justice [hereafter ABA Standards]—Special Functions of the Trial Judge, std. 6-1.1; Schwarzer, *Dealing with Incompetent Counsel—The Trial Judge's Role, supra,* 93 Harv.L.Rev. at p. 635, fn. 12, 640, fn. 34.)

■ By allowing this defendant to proceed to trial without the assistance of counsel when he had not affirmatively waived his right to such assistance, the court abrogated both its duty to protect the rights of the accused and its duty to ensure a fair determination of the issues on their merits. Furthermore, the court's action, rather than promoting, actually hindered the orderly administration of justice. By permitting such a proceeding to go forward, the judge virtually assured an appeal, a reversal and a future retrial, thereby placing an unnecessary additional strain on an already over-burdened judicial system. On the other hand, the court had at its disposal a number of options, any of which would likely have prevented the denial of defendant's right to assistance of counsel. We suggest some available procedures for handling this type of situation.

■ As we have noted, it is well established that trial courts have the inherent and statutory power to punish for contempt of court. (*In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248]; Code Civ. Proc., §§ 128, 1209, 1211.) Thus, in some situations, the court may order defense counsel to participate in the trial and threaten to impose the sanction of contempt if he refuses to do so.[5] The court must be mindful, of course, that contempt is its ultimate weapon, and that power "must be exercised with great caution, lest it stifle the freedom of thought and speech so necessary to a fair trial under our adversary system." (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 560 [68 Cal.Rptr. 1, 440 P.2d 65]; accord, *In re Buckley, supra,* 10 Cal.3d 237, 249.)

---

[5]The court may also consider warning counsel that the matter may be referred to the State Bar for investigation into whether disciplinary measures are appropriate. (Bus. & Prof. Code, § 6103.)

If the court does choose to exercise its contempt power, the attorney may seek review of its determination; if the court has abused its power, the contempt order can be set aside. An illustrative example is *Hughes* v. *Superior Court* (1980) 106 Cal.App.3d 1 [164 Cal.Rptr. 721], in which a public defender was assigned two complex cases that were calendared for trial on the same day. After attempting to get an indication from the master calendar department as to which case would take precedence, counsel "took a chance" and prepared only one of the cases. To his dismay, the other was called for trial and his motion for a continuance was denied. Upon his refusal to participate due to lack of preparation, counsel was held in contempt. The order of contempt was vacated because, under those circumstances, counsel did in fact have sufficient justification for his lack of preparation. (*Id.* at p. 5; cf. *Chaleff* v. *Superior Court* (1977) 69 Cal.App.3d 721, 724 [138 Cal.Rptr. 735].) Thus, the court must carefully consider whether a contempt citation is appropriate under the circumstances and use the remedy only as a last resort to fulfill its duty to insure the protection of the rights of the defendant and the public.

█ If counsel persists in his refusal to participate despite the threat of contempt, the court may hold him in contempt, and in any event should relieve him of his duties in the case. The court should then advise the defendant that he may either represent himself or have substitute counsel appointed. Before a defendant is permitted to choose the option of self-representation, however, the court must determine that he is competent to waive his right to counsel and that any such election is knowing, intelligent and understanding. (*Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581, 95 S.Ct. 2525]; *People* v. *Maddox* (1967) 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163].) The accused should be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'." (*Ibid.;* accord, *People* v. *Lopez* (1977) 71 Cal.App.3d 568, 571 [138 Cal.Rptr. 36].)

█ The choice of self-representation preserves for the defendant the option of conducting his defense by nonparticipation. (*People* v. *Teron* (1979) 23 Cal.3d 103, 115 [151 Cal.Rptr. 633, 588 P.2d 773].) A competent defendant has a right to choose "simply not to oppose the prosecution's case." (*Id.* at p. 108.) Thus, in *Teron* we found no error in a ruling which allowed the defendant to represent himself even though he asked no questions of witnesses, presented no evidence, and made only a single objection in the course of the trial. (*Id.* at pp. 110-111, 114-115.) █ █ █ █ █

█ If the defendant chooses to defend himself by not participating in the trial, he, unlike his attorney, is free to do so, but once this choice is made he *cannot* thereafter claim ineffective assistance of counsel as a basis for

reversal on appeal. (*Faretta* v. *California, supra,* 422 U.S. 806, 835, fn. 46 [45 L.Ed.2d 562, 581].)[6]

■ In the event the defendant chooses to avail himself of the benefits of the assistance of counsel,[7] the court should then appoint substitute counsel to represent him. This substitution order should, of course, be coupled with a continuance to allow the newly appointed counsel adequate time to prepare for trial.[8]

■ Ordinarily, the removal of counsel is occasioned by a request from counsel or the accused (Code Civ. Proc., § 284); the determination whether to allow a substitution is then within the sound discretion of the trial court. (*Mandell* v. *Superior Court* (1977) 67 Cal.App.3d 1, 4 [136 Cal.Rptr. 354] [court has discretion to deny attorney's request to withdraw when withdrawal would result in an injustice or cause undue delay]; *People* v. *Marsden* (1970) 2 Cal.3d 118, 123 [84 Cal.Rptr. 156, 465 P.2d 44] [court may appoint substitute counsel at defendant's request if it is shown that failure to do so would substantially impair or deny the right to assistance of counsel]; see also *People* v. *Rhines* (1982) 131 Cal.App.3d 498, 505-506 [182 Cal.Rptr. 478]; *People* v. *Kaiser* (1980) 113 Cal.App.3d 754, 761 [170 Cal.Rptr. 62].)

Counsel may also be relieved on the court's own motion, even over the objections of defendant or counsel. Although the judge has the discretion to overrule defendant's choice of counsel in order to eliminate potential conflicts, ensure adequate representation, or prevent substantial impairment of court proceedings, this discretion has been severely limited by California decisions. Thus, "the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner

[6]It should be noted in this respect that the trial court correctly denied defense counsel's motion to set aside the information. Having chosen to represent himself at the preliminary hearing, defendant waived his right to claim that errors resulting from his own ineffectiveness rendered the commitment defective. (*Ibid.*)

Similarly, the court's denial of the continuance motion, when no good cause for a continuance was demonstrated, was not an abuse of discretion. (Pen. Code, § 1050.) As noted, defense counsel was free to seek a stay of the proceedings from an appellate court, but apparently failed to do so.

[7]Should the defendant remain silent when presented with this option, as defendant in the present case might have done had he been offered such a choice, the court may not consider this to be a waiver of the right to counsel but must instead assume the defendant desires the assistance of counsel. (*Carnley* v. *Cochran* (1961) 369 U.S. 506, 516 [8 L.Ed.2d 70, 77, 82 S.Ct. 884].)

[8]It is unquestionable that these circumstances would constitute good cause for a continuance under Penal Code section 1050. Similarly, the circumstances outlined above seem to be sufficient to meet the good cause requirement for any delay of the trial date beyond the 60-day requirement of Penal Code section 1382. (See *People* v. *Wilson* (1974) 40 Cal.App.3d 913 [115 Cal.Rptr. 619].)

he deems best, using any legitimate means within his resources—and . . . that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868].)

While we recognize that courts should exercise their power to remove defense counsel with great circumspection (*Smith* v. *Superior Court, supra,* 68 Cal.2d 547, 558-562; *Cannon* v. *Commission on Judicial Qualifications* (1975) 14 Cal.3d 678, 697 [122 Cal.Rptr. 778, 537 P.2d 898]; *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 840-841 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391]; *People* v. *Crovedi, supra,* 65 Cal.2d 199, 208-209), they nevertheless retain the obligation to supervise the performance of defense counsel to ensure that adequate representation is provided. (*McMann* v. *Richardson, supra,* 397 U.S. 759, 771 [25 L.Ed.2d 763, 773]; *Powell* v. *Alabama, supra,* 287 U.S. 45, 52 [77 L.Ed. 158, 162]; Schwarzer, *Dealing With Incompetent Counsel—Trial Judge's Role, supra,* 93 Harv.L.Rev. at pp. 649-653.) Thus, a trial judge may remove defense counsel despite the objections of the defendant and his attorney if a serious conflict of interest arises during the trial proceedings resulting in "an obviously deficient performance. Then the court's power and duty ʼto ensure fairness and preserve the credibility of its judgment extends to recusal even when an informed defendant, for whatever reason, is cooperating in counsel's tactics." (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 619, fn. 10 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333].)

■■■ Defendant here never explicitly requested appointment of counsel nor did he express a preference for any particular counsel. Moreover, defense counsel at one point moved to withdraw; it is therefore unlikely that he would have objected to a substitution of attorneys. Hence, the court was not faced with the problem of involuntary removal of counsel. Had the court been unable to compel defense counsel to participate under the threat of contempt, substitution of counsel under these circumstances would have been justified. Because the goals of the cited cases, i.e., the protection of the defendant's right to counsel of choice and the preservation of the independence of the bar, would not be frustrated by such a course of action, no inconsistency arises between today's result and our prior holdings.

II

We proceed to analyze the derelictions of counsel under the bizarre circumstances of this case.

■ "The duty of a lawyer both to his client and to the legal system, is to represent his client zealously *within the bounds of the law.*" (Italics deleted.) (*Hawk* v. *Superior Court* (1974) 42 Cal.App.3d 108, 126 [116 Cal.Rptr. 713]; CPR of ABA, DR 7-101(A)(1), DR 7-102(A)(8).) More particularly, the role of defense attorney requires that counsel "serve as the accused's counselor and advocate with courage, devotion and to the utmost of his or her learning and ability . . . ." (ABA Standards, Defense Function, std. 4-1.1(b).) ■ Once an attorney is appointed to represent a client, he assumes the authority and duty to control the proceedings. The scope of this authority extends to matters such as deciding what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or reject, what motions to make, and most other strategic and tactical determinations. (*Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619]; *People* v. *Berumen* (1969) 1 Cal.App.3d 471, 476 [81 Cal.Rptr. 757]; ABA Standards, Defense Function, std. 4-5.2.)[9] A refusal to participate in formulating or conducting a defense is not generally among the available strategic options.

■ Once an attorney has been assigned to represent a client, he is bound to do so to the best of his abilities under the circumstances despite the not uncommon difficulty of that task, particularly in the context of criminal trials. (See rule 6-101(2), Rules Prof. Conduct of State Bar.) This duty is not affected by the fact that a client may be uncooperative or that, as in this case, a trial court's ruling on a substantive motion appears to be arbitrary or incorrect. The existence of these admittedly adverse conditions does not relieve counsel of the duty to act as a vigorous advocate and to provide the client with whatever defense he can muster. Any other course would be contrary to the attorney's obligation "faithfully to discharge the duties of an attorney at law to the best of his knowledge and ability." (Bus. & Prof. Code, § 6067.)

■ Defense counsel here argued that his participation in the trial would have constituted a violation of another ethical canon: the prohibition against representing a client without adequate preparation. (CPR of ABA, DR 6-101(A)(2).) This rule cannot, however, be employed to permit an attorney's abandonment of his client by unjustifiably refusing to provide him with any assistance whatsoever. The guideline is designed to caution attorneys against presenting cases that have not been adequately prepared because of lack of time or even lack of competence.

---

[9]Of course, substantive decisions as to what plea to enter, whether to waive jury trial, and whether to testify are ultimately to be made by the defendant after consultation with counsel. (*People* v. *Robles* (1970) 2 Cal.3d 205, 214-215 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Freeman* (1977) 76 Cal.App.3d 302, 310 [142 Cal.Rptr. 806]; *People* v. *Martin* (1972) 28 Cal.App.3d 956, 961 [105 Cal.Rptr. 40]; ABA Standards, Defense Function, std. 4-5.2; CPR of ABA, Ethical Consideration 7-7.)

The record here reveals that counsel had ample time to prepare his case. In addition, he was afforded full discovery and was provided with all necessary files. Counsel's difficulties in preparation stemmed from two sources: his client's obstinate refusal to cooperate or communicate with him, and the trial court's denial of his motion to set aside the information. Although the situation was far from ideal, counsel was not so necessarily unprepared as to run afoul of his ethical obligations under DR 6-101(A)(2).

When, as here, claimed "inadequate preparation" results from this kind of adverse ruling of the court, together with an obstreperous client, counsel is nonetheless obligated to proceed with the case. In the view of the public defender, no attorney in the present case could ever have been adequately prepared without a new preliminary hearing; thus, unless his motion were granted, the case could never proceed to trial. Such result completely frustrates the concept of orderly administration of justice underlying our judicial system.

 "It is the imperative duty of an attorney to respectfully yield to the rulings of the court, *whether right or wrong. (In re Grossman* (1930) 109 Cal.App. 625, 631 [293 P. 683]; DR 7-106(A), CPR of ABA.)" (*Hawk* v. *Superior Court, supra,* 42 Cal.App.3d 108, 126; rule 7-101, Rules Prof. Conduct of State Bar.) "If the ruling is adverse, it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal." (*Sacher* v. *United States* (1952) 343 U.S. 1, 9 [96 L.Ed. 717, 723]; accord, *In re Buckley* (1973) 10 Cal.3d 237, 253, fn. 21, 255 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248]; ABA Standards, Defense Function, std. 4-7.1(d).) If counsel builds a careful record and can demonstrate that he has been compelled to proceed with a case in which he was unprepared through no fault of his own, the matter can then be raised through the proper procedural channels.[10]

 In short, counsel cannot attempt to coerce trial courts to rule in a particular manner by threatening to inject reversible error into the proceedings through an unwarranted refusal to provide effective assistance. The judicial system provides remedies for potential abuses or errors in rulings by the trial courts. Except perhaps in the most extreme circumstances (see, e.g., fn. 10, *ante*), counsel cannot be permitted to bypass these established procedures regardless of how firmly he believes his client has been wronged or abused by the trial court; to do so would be to invite the collapse of our system of judicial administration. "Attorneys, by reason of their position

---

[10]Examples of such situations are presented in *Little* and *Locklar,* discussed *post,* in which public defenders were forced to proceed with cases not assigned to them and with which they were unfamiliar. (*People* v. *Locklar* (1980) 84 Cal.App.3d 224 [148 Cal.Rptr. 322]; *Little* v. *Superior Court* (1980) 110 Cal.App.3d 667 [168 Cal.Rptr. 72].)

and training, have a duty to insure order in our judicial system (*In re Buckley, supra,* p. 254, fn. 21; Bus. & Prof. Code, §§ 6067, 6068, subd. (b))." (*Hawk* v. *Superior Court, supra,* 42 Cal.App.3d 108, 127-128.) Here counsel was doubly wrong: he not only violated his statutory and ethical obligations as an attorney but also acted in such a manner as to effectively deny defendant the right to counsel.[11]

In refusing to participate at trial, the public defender relied on a recent Court of Appeal decision, *People* v. *Locklar, supra,* 84 Cal.App.3d 224. In *Locklar,* the deputy public defender assigned to the case was suddenly taken ill the day before trial was to begin. As a result, he was unable to conduct voir dire examination of the jury. Another deputy appeared in his place to request a continuance. The replacement deputy stated that he had not reviewed the file in the case and was wholly unprepared to proceed. Citing his lack of preparation, the deputy informed the court that he would not participate in jury selection but instead would merely sit with defendant. Nonetheless the jury was impaneled without the deputy's participation. The original public defender returned to try the remainder of the case, and the defendant was convicted. The Court of Appeal correctly reversed on the ground that the defendant had been deprived of the assistance of counsel in the jury selection process. It noted that the physical presence of defense counsel in the courtroom was insufficient to protect defendant's right to counsel because "the constitutional right to counsel mandates diligent, substantial representation, not simply a pro forma appearance." (*Id.* at p. 229.)

In a later decision the court relied on *Locklar* to issue a writ preventing a case from proceeding to trial under somewhat similar circumstances. (*Little* v. *Superior Court* (1980) 110 Cal.App.3d 667 [168 Cal.Rptr. 72].) In *Little,* the deputy public defender assigned to represent the defendant at the preliminary hearing was unable to appear because of a calendaring error. The deputy appearing in his stead was ignorant of the facts of the case and therefore totally unprepared to proceed. Consequently, he refused to cross-examine the prosecution's witnesses or otherwise to participate in the hearing. The magistrate nevertheless denied the deputy's motion for continuance and ordered the hearing to proceed.

The Court of Appeal prohibited further proceedings against the defendant unless he was first afforded a new preliminary hearing. It held that "a defendant's right to counsel in a preliminary hearing, as at trial, is not satisfied by the mere physical presence of an attorney who remains silent and does

---

[11]It does not, however, follow that counsel acted in bad faith; as stated at oral argument, while counsel's actions were misguided and unjustified, they appear to have been undertaken in good faith.

not participate on behalf of the defendant." (Italics omitted; *id.* at p. 671.) As in *Little* and *Locklar,* the actions of the public defender in the present case operated to deny defendant the assistance of counsel.

Several foreign authorities have grappled with somewhat similar situations. In *People* v. *Aiken* (1978) 45 N.Y.2d 394 [408 N.Y.S.2d 444, 380 N.E.2d 272], defense counsel moved for mistrial after his client wilfully failed to appear during voir dire. After his motion was denied, the attorney declined to participate further in the trial. The New York court unanimously refused to reverse the ensuing conviction. Although it recognized that the defendant had not, by his absence alone, waived his right to the effective assistance of counsel, the court held that defendant's wilful absence was a factor to consider in determining the effectiveness of counsel. It characterized defense counsel's conduct as a tactical maneuver designed to coerce the trial court into declaring a mistrial. The court therefore refused to inquire into the wisdom of counsel's decision not to actively participate in the trial as a basis for defendant's claim that he was denied the effective assistance of counsel. (*Id.* at p. 275.)

Despite this conclusion, the court proceeded to examine the record to determine whether counsel's inaction actually resulted in prejudice to the defendant. With respect to the failure of defense counsel to object to the introduction of any evidence, the court eventually concluded that "our examination of the record discloses [no evidence] which was inadmissible and should have been objected to by defense counsel." (*Id.* at p. 276.)

Even if we were to adopt the rationale of *Aiken,* its result is not justified by the facts in the present case. By contrast, the failure of defense counsel here to object to the introduction of certain evidence resulted in the admission of arguably prejudicial material. Defendant was never given the opportunity to litigate the propriety of admitting these items into evidence.[12] Thus, unlike *Aiken,* there were a number of objections which counsel here should have raised.

In *Lahmann* v. *State* (Mo. 1974) [509 S.W.2d 791], relied on by the People, the circumstances were significantly different in that counsel's refusal to participate was based on the instructions of his client. At the preliminary hearing, the defendant requested a continuance to hire an attorney. When the defendant rejected the court's offer of a short continuance, his

---

[12]For example, the admissibility of both a confession and a photographic lineup could have been tested in a hearing outside the presence of the jury. (Evid. Code, § 402.) Further, certain highly prejudicial and possibly inadmissible portions of the confession might have been excluded as being more prejudicial than probative had a proper motion been made under Evidence Code section 352.

motion was denied and the hearing proceeded without counsel. Subsequently, the defendant retained an attorney. The day before trial, the defendant announced he wanted a different attorney; the court refused to grant a continuance to allow defendant to obtain new counsel. As a result, defense counsel, with the knowledge and consent of the defendant and apparently under the defendant's instructions, sat mute during the trial. The Missouri court determined that counsel's actions constituted a form of trial strategy designed to produce an acquittal and therefore did not justify a reversal on the basis of ineffective assistance. (*Id.* at pp. 794-795.) *Lahmann,* like *Aiken,* is distinguishable on its facts. Here there are no indications that counsel acted in collusion with his client; indeed, since defendant remained absolutely silent both in and out of court, he neither endorsed nor disapproved the actions of counsel. Thus, in the present case, the ultimate responsibility for counsel's nonparticipation lies not with the defendant but solely with counsel.

In *State* v. *Lamoreaux* (1974) 22 Ariz.App. 172 [525 P.2d 303], a similar fact pattern resulted in a reversal on the basis of ineffective assistance. After losing a number of motions, including a motion for continuance and a motion to withdraw, the defendant's attorney refused to participate at voir dire or trial. The Arizona court held that counsel's "nonexistent" representation effectively denied the defendant his right to assistance. (*Id.* at pp. 305-306.) It further held that the defendant's failure to object to his counsel's conduct did not result in a waiver of the right to assert ineffectiveness on appeal and that the harmless error standard was inapplicable. Therefore, the court reversed the ensuing conviction. In addition, however, it roundly condemned defense counsel's tactics and attempted to deter similar conduct in the future by referring the matter to the State Bar of Arizona for investigation and possible disciplinary action. (*Id.* at p. 306.)

 We agree with the Arizona court's premise that a defendant may not lawfully be convicted of an offense unless he is afforded the meaningful assistance of counsel in his defense. Counsel's action and inaction here can in no way be characterized as constituting effective assistance of counsel.

## III

 Finally, we turn to the assertion of the People that defendant waived his right to effective assistance of counsel. The People concede that defendant's waiver of the right to counsel in municipal court did not continue in effect in superior court. (Pen. Code, §§ 859, 987.) As noted above, the right to counsel can be waived only if such waiver is knowing, intelligent and voluntary. (*Faretta* v. *California, supra,* 422 U.S. 806, 835 [45

L.Ed.2d 562, 581]; *People* v. *Maddox, supra,* 67 Cal.2d 647, 651.) Although defendant had effectively waived his right to counsel in the municipal court proceeding, he refused to respond to the superior court inquiries as to whether he desired counsel. The court therefore had no choice but to determine that defendant did not elect to waive his right to counsel and to appoint counsel to represent him. (See *Carnley* v. *Cochran, supra,* 369 U.S. 506, 513 [8 L.Ed.2d 70, 75].)

The People contend, however, that although there was no waiver of the right to counsel, defendant impliedly waived his right to *effective* assistance of counsel. They argue that such a waiver can be inferred from defendant's actions in failing to object to counsel's announced course of conduct and his persistent refusal to cooperate with counsel.

*United States* v. *Dujanovic* (9th Cir. 1973) 486 F.2d 182, cited by the People, fails to support this contention. In *Dujanovic,* the defendant's conviction was reversed on the ground that the trial court had failed to make a sufficient inquiry into the defendant's capacity to decide whether to waive counsel. The court concluded there had been no valid waiver. In discussing the difficulties involved in *Faretta* proceedings, the court mentioned in dictum that obstreperous or disruptive actions of the defendant might "well stand as a voluntary relinquishment or forfeiture of the limited constitutional right to proceed *pro se.*" (*Id.* at p. 187.) The People draw comfort from this dictum and urge that defendant's actions constituted a forfeiture of the right to effective assistance of counsel.

■ Although a defendant's right to *self-representation* may be curtailed if his conduct and the circumstances so warrant (*United States* v. *Dujanovic, supra,* 486 F.2d 182, 186; *People* v. *Windham* (1977) 19 Cal.3d 121, 128-129, fn. 6 [137 Cal.Rptr. 8, 560 P.2d 1187]; *Curry* v. *Superior Court* (1977) 75 Cal.App.3d 221, 228-229 [141 Cal.Rptr. 884]), a parallel rule does not apply to the right to counsel. The right to counsel, unlike the right to self-representation, cannot be waived by a failure to assert such a right; "the right to be furnished counsel does not depend on a request." (*Carnley* v. *Cochran, supra,* 369 U.S. 506, 513 [8 L.Ed.2d 70, 75]; accord, *In re Johnson* (1965) 62 Cal.2d 325, 333 [42 Cal.Rptr. 228, 398 P.2d 420].) Thus, defendant must be provided assistance of counsel unless he has made a valid waiver of that right. ■ Furthermore, "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (*Carnley* v. *Cochran, supra,* 369 U.S. 506, 516 [8 L.Ed.2d 70, 77]; accord, *In re Smiley* (1967) 66 Cal.2d 606, 620-621 [58 Cal.Rptr. 579,

427 P.2d 179].) The record here fails to show that defendant validly waived his right to counsel under the foregoing standards.[13]

In a recent decision an appellate court held there had been no valid waiver of the right to counsel despite the fact that the defendant had agreed to his counsel's absence during major portions of the proceedings. (*People* v. *McGraw* (1981) 119 Cal.App.3d 582, 597-598 [174 Cal.Rptr. 711].) Similarly the defendant's failure in the case at bar to protest his attorney's handling of the defense does not remotely approach the constitutional requisites for a valid waiver.

In a related argument, the People contend that counsel's nonparticipation was a trial tactic employed as a result of defendant's own uncooperative conduct. There is no indication whatever that defendant was in collusion with his attorney. Moreover, as discussed above, defendant's conduct in no way constituted a waiver of his right to effective assistance of counsel.

## IV

 A conclusion is inescapable that counsel's nonparticipation was neither "effective" nor "assistance" in any sense of those terms. Under these circumstances counsel's actions deprived defendant of his constitutional right to counsel.

 "The constitutional right to the assistance of counsel in a criminal case [citations] includes the guarantee that such assistance be 'effective.' [Citations.] That 'effective' counsel required by due process . . . is counsel 'reasonably likely to render, *and rendering* reasonably effective assistance.'" (*In re Saunders* (1970) 2 Cal.3d 1033, 1041 [88 Cal.Rptr. 633, 472 P.2d 921].) As discussed above, counsel's conduct here fails to comport with this standard; we therefore conclude that defendant's conviction cannot stand. (*People* v. *Pope, supra,* 23 Cal.3d 412, 425-426.)

The judgment is reversed.

Bird, C. J., Broussard, J., and Reynoso, J., concurred.

**KAUS, J.**—While I, too, am deeply offended by the spectacle of a defendant being led off to prison after an ex parte trial, I cannot bring myself to agree

---

[13]The dissent of Justice Kaus, using the cold record, conjures up a theory regarding defendant's conduct not perceived by anyone at the trial and not urged by anyone on this appeal. If the defendant were trying to plead guilty, failure of the trial court to give the admonitions of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], would have been reversible error. Despite the dissent's apparent distaste for *Boykin,* overruling decisions of the United States Supreme Court is not in our catalogue of powers.

that the correct reaction for this court is to reverse the conviction with a lecture to the trial court and defense counsel.[1]

It is obvious that the only reason why this appeal poses such a difficult problem is defendant's courtroom conduct—his silence, followed by disruptive behavior which compelled his exclusion from the proceedings.[2]

I can think of only two reasons for defendant's conduct: first, he may have hoped that by creating a sufficiently grotesque situation, he could trick the trial court into committing error. Second, his behavior may simply have been his way of saying "I am guilty."

There can be no question as to the trial court's view. It found that defendant was "acting as he is wilfully, based on what appears to be an enormous quantity of evidence against him, and his only chance of beating the case, if it is a chance, is to try and get some error into the case, . . ." If the trial court was correct, we should hold that defendant is estopped to rely on errors provoked by his own bizarre conduct. The outcome of an appeal from a conviction should not depend on how well the court passes a practical bar examination, necessitated by defendant's misconduct which has no purpose other than to test the court's ability to field novel problems created by that very misconduct.[3]

I frankly do not know to what extent we are bound by the trial court's finding on the issue of defendant's motive. If my view mattered, I find it far more likely that defendant's conduct was just his way of trying to achieve what he had wanted to do in the first place: to plead guilty and receive treatment for a perceived mental problem. Rebuffed when he attempted to do so in orthodox fashion, he then chose total, bizarre, seemingly

---

[1]Nor do I find myself able to join Justice Haning's dissent which is based on the theory that in spite of his silence defendant waived the right to counsel. While I agree that a "waiver by silence" is theoretically possible, the fact is that the trial court insisted that the deputy public defender continue as defendant's lawyer. Thus when defendant was removed from the courtroom for disruptive conduct, he had no reason to believe that his waiver had been accepted. Further, the trial court was not obligated to accept it. By strong dictum in *Ferrell* v. *Superior Court* (1978) 20 Cal.3d 888, 891 [144 Cal.Rptr. 610, 576 P.2d 93], we indicated that an accused may be deprived of the right to represent himself, if he engages in disruptive conduct, inconsistent with the proper exercise of that right.

[2]Defendant had, of course, been found mentally competent to be tried. (See Pen. Code, § 1367 et seq.)

[3]This does not mean that I disagree with all of the majority's criticism of the trial court and counsel, though some of it strikes me as a trifle unfair. Just for example: the majority suggests that, as long as the trial court acted "with great circumspection," it could have removed counsel from the case. For this it cites *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 558-562 [68 Cal.Rptr. 1, 440 P.2d 65]. I have read and reread *Smith* and, with all respect, had I been the trial court in this case, I would have found nothing there to encourage me to remove counsel in the situation presented by defendant in this case.

irrational and self-destructive noncooperation as his way of confessing guilt, securing a conviction and getting treatment.[4] I believe that we should honor his method.

There is sound precedent for a forthright recognition of the fact that the official ritual—a hygienically boykinized defendant standing contritely before the court and pleading guilty because he is, in fact, guilty—is not the only way to confess guilt. In *People* v. *Teron* (1979) 23 Cal.3d 103 [151 Cal.Rptr. 633, 588 P.2d 773], a case tried as a capital case, the defendant was permitted to represent himself, the conditions prescribed by *Faretta* v. *California* (1975) 422 U.S. 806, 835-836 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525], having been satisfied. He remained silent throughout the proceedings—guilt phase, special circumstance phase and penalty phase.[5] He made no opening or closing statements, did not cross-examine the prosecution's witnesses and called none of his own. On appeal the public defender predictably argued that when it became clear that Teron did not intend to present a defense, his right to represent himself should have been revoked. The *Teron* court made short shrift of that argument: "Defendant, however, bears no duty to present a defense. *He has the right to plead guilty,* even against the advice of counsel. [Citation.] A fortiori, having put the state to its proof, he has no obligation to try to rebut it." (*Id.* at p. 115, italics added.) Obviously the court had no illusions about Teron's purpose. Nevertheless, in spite of arguable precedent which would have justified it in doing so (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086]), it did not reverse because the *Boykin-Tahl* script had not been followed. Rather the court gave effect to Teron's highly individualistic way of telling the trial court that he was guilty.[6]

The Supreme Court said in *Faretta* v. *California* (1975) 422 U.S. 806, 815 [45 L.Ed.2d 562, 570, 95 S.Ct. 2525], quoting from *Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269, 280 [87 L.Ed. 268, 275, 63 S.Ct. 236, 143 A.L.R. 435]: ". . . when the administration of the criminal

---

[4]A few days before the preliminary hearing defendant appeared before a superior court judge and made the abortive attempt to plead guilty, related in the majority opinion. In the course of the proceedings the court patiently explained to defendant the various types of commitments for mental problems which might be available to him, depending on his plea or conviction. Although at the end of a particularly tricky passage, defendant had said "I'm afraid you lost me," it sufficiently appears that defendant could easily have thought that somewhere there was a mental health facility which would accept him after a conviction accompanied by apparently irrational conduct.

[5]The sole exception to defendant's total lack of participation was that when his confession was offered, he suggested that the court admit a transcript, rather than a tape.

[6]McKenzie's method of conveying the same information is, of course, just a variant of Teron's: instead of remaining mute in the courtroom, he absented himself, leaving behind an attorney who had already announced that he would remain mute.

law . . . is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards . . . is to imprison a man in his privileges and call it the Constitution.''

Since I agree that the trial court did not err in denying defendant's motion to set aside the information and to continue the trial (see maj. opn., fn. 6), I would affirm the judgment.

Richardson, J., concurred.

**HANING, J.\***—I respectfully dissent.

While I strongly agree with the principles recited by the majority, I arrive at a different conclusion in this unique factual situation.

The foundation cases of *Johnson* v. *Zerbst* (1937) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357] and *In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420] are often cited, and properly so, for the principle that waiver of counsel cannot be inferred from a silent record. However, I distinguish between a silent record and a silent defendant. *Johnson* v. *Zerbst, supra,* 304 U.S. at p. 464 [82 L.Ed. at p. 1466], held, "*The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.*" (Italics added.) This rule was reiterated by this court in *In re Johnson, supra,* 62 Cal.2d at p. 335, and a number of decisions following. A review of the cases reversing convictions for ineffective waiver of counsel reveals situations where the court either failed to advise or inadequately advised defendants of their rights. These decisions rest on the premise that the defendants wanted legal assistance or would have accepted it if offered. This record presents a contrary situation—a defendant who was offered the assistance of an experienced specialist and who continually rejected that assistance.

The defendant is no stranger to the criminal courts. Prior to the instant case he was convicted of felonies in Texas and California. He was found capable of representing himself at the preliminary examination, following a thorough voir dire by the magistrate, and he had previously represented himself at various stages of criminal proceedings in Santa Barbara.

Before the preliminary examination the defendant appeared in propria persona before the superior court judge who later presided over his trial.

---

\*Assigned by the Chairperson of the Judicial Council.

At that time he advised the court he wished to enter a guilty plea, but wanted to be committed to a hospital rather than to prison. He engaged in dialogue with the court and responded appropriately to questions about his prior convictions. The court advised him that the only way he could be reasonably assured of being committed to a hospital were if he were found not guilty by reason of insanity or found incompetent to stand trial. Based upon that discussion with the court he subsequently decided to enter a plea of not guilty by reason of insanity, and so advised the magistrate when he returned to the municipal court for his preliminary examination.

Although he appeared in propria persona at the preliminary examination and did not cross-examine the witnesses, he did make motions to the court for a continuance, for discovery, for access to the law library, for a legal runner and for legal writing paper and envelopes. The record demonstrates that he had made similar motions on a prior occasion when he represented himself in Santa Barbara.

When he next appeared in superior court after being held to answer, he became uncommunicative and refused to speak or respond to the court's inquiries. The public defender was then appointed to represent him, but when the deputy defender assigned to his case went to the jail to see him, the defendant refused to come out and meet with him. When this method of contact failed, the defense attorney was taken back to the defendant's cell, where he again attempted to speak with him and gain his cooperation. The defendant wouldn't even reveal his name, rank and serial number, let alone cooperate; he simply remained mute and refused to acknowledge counsel's presence. His conduct toward the public defender never changed throughout the proceedings. Although questions concerning his competency were raised, he was, as noted by the majority, twice found competent to cooperate with counsel and stand trial—on one occasion by the court and on another as the result of a jury trial on the competency issue.

The trial judge concluded that defendant heard and understood everything being said and was able to cooperate with his counsel. In response to the public defender's explanation of why he was unable to prepare himself for trial or represent defendant, the court stated:

". . . it seems to me that all of your problems, which are understandable, are created by the Defendant who understands and is able to cooperate and, in effect, he is waiving a lot of rights that the constitution affords him. But it's his right to waive those protections. And I find that is what he is doing.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . The record should also indicate a couple of things briefly. . . . I have before me a transcript of the proceedings had in this courtroom with

the Defendant at a time when his case was still in the Municipal Court, where he came up here to talk about settlement of his case on November 16th of this year. The transcript is some eighteen pages long. And I am even more satisfied than I was before, if that is at all possible, that the Defendant is acting as he is wilfully, based on what appears to be an enormous quantity of evidence against him, and his only chance of beating the case, if it is a chance, is to try to get some kind of error into this case, and because he is a very articulate fellow—he was in November—and very bright, and he's playing the 'I'm crazy' game with the Court. Because we talked about that at some length during those Court proceedings.

"Just so that those who look over our shoulders after the case is concluded from on high will understand, that this is the ultimate situation which has been brought to us or visited upon us by *Faretta,* and we have to deal with it either this way, or the Defendant, this type of a Defendant would never get to trial."

The court's observation of the strength of the prosecution's case is borne out by the record. The victims were alone in their fourth floor apartment at approximately 6:30 a.m. when they were assaulted by an assailant armed with a knife. One victim was stabbed with the knife, the other was raped and both were robbed. The assailant gained entry to the apartment through a bathroom window which opened into an air shaft in the apartment building. The bathroom window was approximately 10 inches from a window to an adjoining apartment. When the police visited the adjoining apartment they discovered that defendant's brother lived there, but defendant was not present at that time. Upon receiving permission to search the apartment, a set of knives, contained in a case and each in their original wrapping and bearing the distinctive legend "Pierre Santini" were found, with one knife missing from the case. A neighbor located a "Pierre Santini" knife under a vehicle next to her home, near which she noticed a person matching defendant's description to be loitering suspiciously around the time of the crime. This knife matched the set in the brother's apartment, and fit into the slot in the knife case for the missing knife. The victims both selected defendant's picture from a photographic line-up, in addition to identifying him at the trial. During the period when the defendant was communicative and representing himself, and in response to his request for discovery, the investigating officer delivered the discovery items to him. At that time defendant advised the officer that the items were not needed because it was his intention to confess his guilt. The defendant asked the officer to return the following day to obtain the confession and gave him permission to record it. The officer returned as requested, gave a *Miranda* warning, and obtained and tape-recorded the confession.

The defendant, as previously noted, failed to examine any witnesses at the preliminary examination. Neither victim would meet with nor discuss the case with defense counsel and defendant's brother had disappeared and could not be located. In short, defense counsel's chances of success shifted rapidly from the category of the improbable to the impossible when the defendant himself elected not to reach for his only possible lifeline in an otherwise hostile sea. The public defender repeatedly advised the court, in defendant's presence, that as a result of defendant's lack of cooperation and refusal to communicate with him he was unable to prepare any meaningful defense or provide effective representation. He further advised the court, as the majority notes, that he would not participate in any fashion in the trial. Yet, at no time did defendant object, complain about his counsel's tactics, nor ask the court to appoint new counsel for him.

"Waiver is the intentional relinquishment of a known right after knowledge of the facts." (*Roesch* v. *DeMota* (1944) 24 Cal.2d 563, 572 [150 P.2d 422].) Waiver may occur as " 'the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' " (*Crest Catering Co.* v. *Superior Court* (1965) 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150], quoting *Rheem Mfg. Co.* v. *United States* (1962) 57 Cal.2d 621, 626 [21 Cal.Rptr. 802, 371 P.2d 578]; *Medico-Dental etc. Co.* v. *Horton & Converse* (1942) 21 Cal.2d 411, 432 [132 P.2d 457].) The defendant's conduct here is so inconsistent with an intent to enforce his right to counsel that it does induce a reasonable belief that the right was waived, as the trial judge determined. Given the background, experience and *conduct* of the defendant within the particular facts and circumstances of this case (*Johnson* v. *Zerbst, supra,* 304 U.S. 458; *In re Johnson, supra,* 62 Cal.2d 325), I conclude that the waiver was understandably and intelligently made, and that the record supports the trial court's conclusion that the defendant is attempting to manipulate the system.

I would affirm the judgment.

On October 6, 1983, the dissenting opinion of Kaus, J., and the concurrence in that opinion by Richardson, J., were modified to read as printed above.