Filed 3/26/13  P. v. Guanill CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO ROY GUANILL,<br><br>        Defendant and Appellant. | A136118<br><br>(San Francisco County<br>Super. Ct. No. 214962) |

Fernando Roy Guanill appeals from the revocation of his probation.  Appellant's probation stems from his conviction, based on his plea of no contest, of assault with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(1)[1]).  Appellant's counsel raises no issues, and requests an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436.  In accordance with *Wende* and *Anders v. California* (1967) 386 U.S. 738, appellant's counsel elected to file a supplemental brief.  Based on our review of the record and contentions raised in the supplemental brief, we find no arguable issue.

## BACKGROUND

### *Appellant's Underlying Offense*

San Francisco Police Officer James Johnson testified that he responded to a call regarding a battery at an apartment complex on 402 Broadway Street in San Francisco. At the scene, Johnson encountered the victim Connie Calzudes who was "hysterical." Calzudes was in tears, and she screamed, " 'Help me.  He choked me.' "  Johnson noticed

---

[1] Further section references are to the Penal Code unless otherwise indicated.

1

red markings along Calzudes's throat and a large lump that covered her left eye. Calzudes stated that the perpetrator was " 'Fernando,' " and gave Johnson Fernando's room number. Johnson went to Fernando's room with several police officers.

Johnson stated that he knocked on Fernando's door while identifying himself as " 'San Francisco Police Officer.' " There was no response. One of the officers obtained a key to Fernando's room, but the officer could only unlock one of the two locks on the door. As the officers waited, someone inside the room relocked the lock that was just unlocked. After Johnson continued to knock on the door, one of the officers advised the person in the room that the person had five seconds to open the door. After waiting to no avail, Johnson kicked the door in. Johnson found appellant laying on a bed, and handcuffed him.

Antonio Flores, a sergeant inspector for the City and County of San Francisco, testified that he spoke with Calzudes's friend, Eunice Dzodzomenyo. Dzodzomenyo told Flores that she saw appellant attack Calzudes. Dzodzomenyo stated that on the day of the incident, she went out with Calzudes. She then returned with Calzudes to a room in the apartment complex on 402 Broadway Street. Appellant later showed up at that room.

According to Flores, Dzodzomenyo stated that Calzudes and appellant started kissing while in the room. As the two were kissing, appellant suddenly slapped Calzudes across her face. Calzudes fell to the floor. Appellant then picked Calzudes up off of the floor and punched her. Calzudes again fell to the floor. As Calzudes lay on the floor, appellant kicked her. Appellant stated, "this is for her own good." Dzodzomenyo told Flores that, as a result of appellant's attack, Calzudes sustained a black eye, bruising on the side of her face, and redness on her neck.

The information filed by the San Francisco District Attorney charged appellant in count one with domestic violence (former Pen. Code, § 273.5, subd. (a)); [2] in count two

---

[2] Reference to Penal Code section 273.5 is to the former Penal Code section 273.5, which was in effect at the time the district attorney filed the information, March 29, 2011. In 2012, the Legislature amended section 273.5 by adding subdivision (j). (Stats. 2012, ch. 867.)

with assault with force likely to cause great bodily injury (§ 245, subd. (a)(1)); in count three with overworking an animal (§ 597, subd. (b)); and in count four and count five with resisting a police officer (§ 148, subd. (a)(1)). The district attorney alleged that appellant was ineligible for probation because he was convicted of two prior felonies (§ 1203, subd. (e)(4)). The district attorney further alleged that appellant suffered a prior conviction (§§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)), and served a prison sentence after committing a felony within the meaning of section 667.5, subdivision (b).

At the arraignment, appellant pleaded not guilty to each count and denied all allegations. Appellant later withdrew his not guilty plea and pleaded guilty to count two, assault with force likely to cause great bodily injury (§ 245, subd. (a)(1)). The remaining counts and allegations were dismissed. The court suspended imposition of appellant's sentence, and placed him on probation for three years.

### *Appellant's Probation Revocation Hearing*

Nearly 11 months after appellant was placed on probation, the court held a hearing to determine whether appellant violated his probation.

Jemile Carrejo testified that he was working at a cafe located on Stockton Street in San Francisco called Cafe Devine. The cafe was very busy because it was the day of the North Beach Fair. Carrejo stated that appellant came to the cafe several times that day to use the bathroom, and appeared inebriated.

According to Carrejo, on one such occasion, appellant made his way to the front of the line to use the bathroom, arguing with other patrons who were waiting in line. One woman asked appellant to stop, and appellant reacted aggressively. A waitress at the cafe asked appellant to leave because he was "starting to create a scene."

Carrejo further testified that he also asked appellant to leave, and started to escort appellant out of the cafe. As appellant was exiting, he abruptly punched Carrejo in the mouth, which prompted an employee at the cafe to grab appellant and push him out of an exit door. Appellant landed on the sidewalk outside of the cafe.

Kenneth Deroque, a paramedic for American Medical Response, testified that on the day of the incident, he responded to Cafe Devine after receiving a dispatch that

3

someone had fallen outside of the cafe.  When he got there, he saw police officers and a fire crew attending appellant.  Deroque indicated that appellant was disoriented and intoxicated.

Deroque stated that he and the fire crew placed appellant on a backboard and began strapping appellant to it, at which point appellant spat on Deroque's shoulder.  Deroque felt threatened by appellant, so he sedated him.

Appellant testified that on the day of the incident, he was enjoying the North Beach Festival at Washington Square Park.  The last thing appellant recalled that day was feeling extremely sick and walking towards Cafe Devine to seek help.  Appellant stated that he then "woke up in General Hospital on a gurney." Appellant did not remember spitting on Deroque or hitting Carrejo.  Appellant was surprised to have hit Carrejo because he knew Carrejo for some time and the two got along well.

According to appellant, two days prior to the incident, he was released from the University of California, San Francisco Hospital (UCSF).  Appellant was a subject in a Hepatitis C study at UCSF involving diabetics.  At UCSF, appellant indicated that he was injected with a substance, which doctors had claimed was "extremely powerful and extremely dangerous."  Appellant further testified that he sustained head trauma in the past, and that he had been suffering from periodic amnesia.

After the incident, a motion was filed to revoke appellant's probation.  It was alleged that appellant violated probation by punching Carrejo and spitting on Deroque.  The court revoked appellant's probation, and appellant was taken into custody.  The district attorney did not file criminal charges based on the incident.

While awaiting his probation revocation hearing, appellant made three *Marsden*[3] motions, requesting that Ryan King, appellant's defense attorney at the time, be relieved.  All three motions were denied.  The court subsequently held a *McKenzie*[4] hearing to determine whether to remove King as appellant's counsel once more.  At the conclusion

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

[4] *People v. McKenzie* (1983) 34 Cal.3d 616.

4

of the hearing, the court relieved King and appointed Andrea Hartsough as appellant's counsel.[5]

In addition, appellant made an oral motion to withdraw his guilty plea while awaiting his probation revocation hearing. Appellant claimed that he entered his plea because he wanted to attend to his mother, who was gravely ill. The court denied appellant's motion, finding that appellant's stated reason was insufficient ground to withdraw his plea.

At appellant's probation revocation hearing, appellant asserted that his probation violation was not willful because he was under the influence of "extremely powerful and extremely dangerous" doctor-prescribed drugs at the time of the incident. The court revoked appellant's probation.

On July 5, 2012, appellant's counsel Hartsough filed a notice of appeal. Hartsough indicated that the appeal was based on non-certificate grounds regarding postplea matters not challenging the validity of his guilty plea. On July 10, 2012, appellant filed a second notice of appeal on his own. Appellant indicated that the appeal was based on certificate grounds. Appellant attached an application for certificate of probable cause with his notice, which the court denied.

## DISCUSSION

Appellant's counsel raises eight points in his supplemental brief. We have reviewed the entire record and considered the matters suggested by appellant's counsel, and find no arguable issue.

To the extent appellant disputes the validity of his guilty plea, appellant must secure a certificate of probable cause from the superior court to obtain appellate review on that matter. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1088; § 1237.5; Cal. Rules of Court, rule 8.304(b).) Because the court denied appellant's application for probable cause, which appellant filed with his second notice of appeal, we cannot proceed on the merits of that claim. Appellant's remaining seven contentions stem from post plea

---

[5] The reporter's transcripts for appellant's *McKenzie* hearing are not contained in the record.

5

matters that do not challenge the validity of his guilty plea. We will consider them in turn.

Appellant's assertion that his probation violation was not willful raises a preponderance of the evidence standard. (*People v. Galvan* (2007) 155 Cal.App.4th 978, 982.) The evidence in the record is sufficient to support the court's finding that appellant willfully violated his probation. Accordingly, to the extent appellant asserts that the court unfairly discriminated against him when it revoked his probation, we find insufficient evidence in the record to support that claim.

Appellant claims that the court erred in denying his three *Marsden* motions. The decision to "grant a requested substitution [of appointed counsel] is within the discretion of the trial court." (*People v. Roldan* (2005) 35 Cal.4th 646, 681, citing *People v. Smith* (2013) 30 Cal.4th 581, 604.) We "will not find an abuse of that discretion unless the failure to remove appointed counsel and appoint replacement counsel would 'substantially impair' the defendant's right to effective assistance of counsel." (*Roldan*, at p. 681, citing *Smith*, at p. 604.) After reviewing the record, we conclude that the court did not abuse its discretion in denying appellant's *Marsden* motions.

Appellant further argues that he received ineffective assistance of counsel from King, Hartsough, and appellant's attorney on appeal, Christopher Love. Appellant must satisfy the two-prong *Strickland* test to prevail. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-694.) First, appellant must affirmatively show that "counsel's representation 'fell below an objective standard of reasonableness.' " (*People v. Jones* (2010) 186 Cal.App.4th 216, 235, quoting *Strickland*, at p. 688.) Second, appellant must show that " 'there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Jones*, at p. 235, quoting *Strickland*, at p. 694.) Furthermore, we "will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581-582; accord *People v. Hart* (1999) 20 Cal.4th 546, 624.)

6

Appellant contends that King provided ineffective assistance of counsel when King refrained from filing appellant's motion to withdraw his guilty plea. King claimed that he did not file appellant's motion to withdraw his plea because the matter was resolved after the court denied the motion based on appellant's oral representations. We cannot conclude on this record that King had no rational basis for his omission.

Appellant also argues that Hartsough rendered ineffective assistance of counsel because she failed to assert that appellant's probation violation was not willful given that he was under the influence of powerful doctor-prescribed drugs. However, this is not the case. At appellant's probation revocation hearing, appellant testified that he was under the influence of "extremely powerful and extremely dangerous" doctor-prescribed medications at the time of the incident. At the conclusion of the hearing, Hartsough asked the court to take appellant's testimony "at face value" and find that appellant "did not willfully violate his probation." This is tantamount to an assertion that appellant did not willfully violate probation because of the medications he had taken.

To the extent appellant argues ineffective assistance of counsel regarding his attorney on appeal, that claim is not supported by the record before us.

Lastly, appellant contends that his speedy trial rights were violated while awaiting his probation revocation hearing. However, the right to a speedy trial cannot be asserted for the first time on appeal. (*People v. Blanchard* (1996) 42 Cal.App.4th 1842, 1849, citing *People v. Wilson* (1963) 60 Cal.2d 139, 146.) Because the record does not show that appellant claimed below that he was denied his right to a speedy trial in the probation revocation, appellant's contention is deemed waived.

## DISPOSITION

Our independent review of the record reveals no arguable issues that require further briefing.  The judgment is affirmed.

_____
Lambden, J.

We concur:


_____
Kline, P.J.


_____
Haerle, J.