980 F.2d 736
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Willie R. BEASLEY, Petitioner-Appellant,
v.
Midge CARROLL, Warden, Duel Vocational Institution,
Respondent-Appellee.
 No. 91-16798.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1992.*
Decided Nov. 27, 1992.
 
 Before GOODWIN, FARRIS and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Willie R. Beasley appeals pro se the district court's denial of habeas corpus relief. He challenges his conviction for murder pursuant to California Penal Code § 187 on the grounds that (1) the prosecutor improperly questioned him regarding his post-arrest silence; (2) the prosecutor improperly cross-examined him regarding a prior conviction; (3) the trial court erred in refusing to instruct the injury on the crime of kidnapping; (4) he was denied a trial by jury drawn from a representative cross-section of the community; (5) he was denied the effective assistance of counsel; and (6) his conviction was based on perjured testimony.
 
 BACKGROUND
 
 3
 Willie R. Beasley was convicted in the Superior Court of California for the first degree murder of Lawrence Trailor, possession of a concealable firearm by a felon, assault with a deadly weapon, and assault with intent to commit mayhem on his estranged wife, Connie. On April 25, 1980, he was sentenced to state prison for 25 years to life.
 
 
 4
 Beasley and Connie were married in 1977 and separated the following year. In the fall of 1979, Connie began dating Lawrence Trailor. When Beasley learned that she was having sexual relations with Trailor, he told her, "you just signed [Trailor's] death certificate." On November 16, 1979, Beasley telephoned Connie and threatened to shoot her in the mouth and to kill Trailor. Connie reported the incident to the police and was referred by the district attorney to a victim assistance program for battered women. Later that evening, Connie and Trailor went to the opera with some friends. When they returned to Connie's apartment, Beasley was hidden in a closet, armed with a gun and wearing a pair of pantyhose over his head. Beasley forced Connie and Trailor to sit on a couch, verbally abused them, and then shot Trailor in the chest and Connie in the mouth. Beasley shot Connie again in the back as she attempted to get help from neighbors. Beasley fled and disposed of the gun in a garbage can. He then contacted his attorney and turned himself into the police later that evening.
 
 
 5
 Beasley maintains that he shot Connie and Trailor in self-defense. He testified that because they had previously threatened him several times, and because he knew that Trailor was a convicted killer, he feared for his life. On the night of the shooting, Beasley alleges that Connie telephoned him, saying she wanted to apologize and asking him to meet with her. When he arrived at the arranged location, Connie and Trailor forced him into a car at gunpoint and drove him to Connie's apartment. At the apartment, Beasley claims that Connie and Trailor said they were going to kill him and claim self-defense. A struggle then ensued over the gun, and Connie and Trailor were accidentally shot.
 
 
 6
 The California Court of Appeal affirmed Beasley's conviction in an unpublished opinion. On June 30, 1982, the California Supreme Court summarily denied Beasley's petition for rehearing and his petition for a writ of habeas corpus. Beasley's second habeas petition was also summarily denied on July 27, 1988. He then petitioned the district court for habeas relief on September 22, 1988.
 
 DISCUSSION
 A. Doyle Error
 
 7
 Beasley claims that it was a violation of due process under the standard set forth in Doyle v. Ohio, 426 U.S. 610 (1976), for the trial court to allow the prosecutor to question him regarding his failure to report to the police that he had been threatened and kidnapped by Connie and Trailor.
 
 
 8
 In Doyle, the Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Id. at 619. Subsequently, in Jenkins v. Anderson, 447 U.S. 231 (1980), the Supreme Court held that because the state had played no role in inducing silence prior to arrest and Miranda warnings, a prosecutor's use of prearrest silence was not a violation of due process. Id. at 240.
 
 
 9
 During cross-examination, the prosecutor specifically asked Beasley whether he pressed charges against Connie after he was arrested and then followed up in an attempt to refute Beasley's exculpatory claim.[1] When defense counsel objected to this line of questioning as a Doyle violation, the trial court overruled the objection and permitted the prosecutor to continue. The prosecutor resumed, but limited his questions to the period between the killing and the time when Beasley turned himself in. Clearly, the line of questioning prior to defense counsel's objection was improper under Doyle, while the questions after the objection were appropriate in light of Jenkins. Nonetheless, we agree with the determination of both the state court of appeals and the district court that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967). The evidence of Beasley's guilt was overwhelming. The trier of fact could properly reject his claim of self-defense.
 
 B. Prior Conviction
 
 10
 Beasley contends that he was improperly cross-examined about a prior conviction when the prosecutor asked him whether he belonged "to a class of people that under California Law are prohibited from possessing handguns." The state court of appeals found that the question violated the rule of People v. Hall, 28 Cal.3d 143, 157, 616 P.2d 826, 834 (1980), which holds that once a defendant stipulates to a prior conviction, evidence of the prior conviction is inadmissible. But, the court went on to state that the error was nonprejudicial.
 
 
 11
 However, because Beasley alleges that the trial court erred as a matter of California evidentiary law, he has not raised a cognizable issue in a federal habeas proceeding. It is well established that " 'federal habeas corpus relief does not lie for errors of state law.' " Estelle v. McGuire, 112 S.Ct. 475, 480 (1991) (quoting Lewis v. Jeffers, 110 S.Ct. 3092, 3102 (1990)). Our inquiry is therefore limited to determining whether there have been any violations of the Constitution, laws, or treaties of the United States. Since the evidentiary error complained of is not of a constitutional dimension, the claim fails. See Middleton v. Cupp, 768 F.2d 1083, 1085-86 (9th Cir.1985), cert. denied, 478 U.S. 621 (1986).
 
 C. Failure to Instruct Jury
 
 12
 Beasley argues that the trial court erred in refusing to instruct the jury on the crime of kidnapping. Noting that the court has a duty to instruct on a defendant's defense theories if they are supported by the evidence, see People v. Sedeno, 10 Cal.3d 703, 716, 518 P.2d 913, 921 (1974), the state court of appeals agreed. The court found that the requested kidnapping instruction was reasonably related to and consistent with Beasley's self-defense argument. Nonetheless, the court held the error to be nonprejudicial because the kidnapping encompassed only a small portion of Beasley's overall self-defense theory and the conviction was supported by overwhelming evidence.
 
 
 13
 A faulty jury instruction does not, by itself, raise a cognizable issue in a federal habeas corpus proceeding. To obtain relief, a petitioner must show that the alleged error "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir.1988). Furthermore, where the alleged error is the trial court's failure to give an instruction, the burden on the petitioner is "especially heavy." Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.").
 
 
 14
 Beasley fails to meet this standard. As the district court noted, the trial court provided extensive instructions on self-defense consistent with Beasley's contention that he accidentally killed Trailor while trying to defend himself. Moreover, while kidnapping was relevant factually to Beasley's self-defense claim, the legal elements of kidnapping were irrelevant to the material issues in the trial. It is therefore implausible that the trial court's omission of the requested instruction affected the deliberations of the jury and deprived Beasley of a fair trial.
 
 D. Procedural Default
 
 15
 Beasley maintains that the prosecutor systematically excluded Blacks from the jury, depriving him of a trial by a jury drawn from a representative cross-section of the community. The district court dismissed the claim on the ground that the doctrine of procedural default precluded Beasley from raising it. State procedural rules require a timely objection to jury selection procedures to preserve the issue for review. People v. Wheeler, 22 Cal.3d 258, 280, 583 P.2d 748, 764 (1978). At the time of trial, however, neither the petitioner nor his counsel objected to the composition of the jury. In light of the rule that "when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice," Engle v. Isaac, 456 U.S. 107, 129 (1982), the district court found Beasley's claim to be precluded. The claim, however, was not precluded.
 
 
 16
 In a situation such as this one where no state court has expressly relied on state procedural grounds to bar Beasley's claim, federal review is appropriate. This result is dictated by Harris v. Reed, 489 U.S. 255 (1989), where the Supreme Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Id. at 263 (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)).
 
 
 17
 Here, Beasley's claim was raised for the first time on a habeas petition before the California Supreme Court and summarily denied without comment or case citation. Therefore, because the state supreme did not clearly or expressly base its denial of relief on procedural grounds, the district court was not barred from reviewing the merits of Beasley's claim.
 
 E. Ineffective Assistance of Counsel
 
 18
 Beasley argues that he was denied the effective assistance of counsel because his counsel failed to object to an all-white jury and because he waived Beasley's presence at an in camera hearing in which the prosecutor challenged defense counsel's striking of women from the jury panel.
 
 
 19
 To succeed on a claim of ineffective assistance of counsel, Beasley must show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that counsel's errors prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Strickland establishes a strong presumption that defense counsel's performance was constitutionally adequate. Id. at 689.
 
 
 20
 Under California law, the scope of defense counsel's authority "extends to matters such as deciding what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or reject, what motions to make, and most other strategic and tactical determinations." People v. McKenzie, 34 Cal.3d 616, 631, 668 P.2d 769, 779 (1983). Here, the petitioner himself has informed us that his counsel made a deliberate tactical choice to attempt to exclude Black women from the jury on the assumption that they would be more likely to sympathize with the victim. Indeed, it was this strategy that led the prosecution to file a motion objecting to the defense's use of peremptory challenges against women. If in fact the prosecutor was deliberately attempting to strike Blacks from the jury, the defense counsel's failure to object can be seen as consistent with his strategic decision to attempt to exclude Black women. The defense counsel's tactics do not constitute ineffective assistance of counsel. See Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir.1984).
 
 
 21
 Beasley also argues that his counsel's decision to waive his presence at an in camera hearing on the prosecution's motion objecting to the defense's use of peremptory challenges rendered his counsel's assistance ineffective. Beasley maintains that his presence was waived without his consent and that he was prejudiced because he would have personally objected to the prosecutor's striking of Blacks.
 
 
 22
 This claim also fails to satisfy the first prong of the Strickland test. It was not objectively unreasonable for defense counsel to waive Beasley's presence at a hearing to determine whether the defense was impermissibly excluding women from the jury. The defendant does not have the right to be present at all proceedings. United States v. Gagnon, 470 U.S. 522, 526 (1985) (" '[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' "). And, the defense counsel's judgment that Beasley's absence would not be detrimental to the defense was appropriate under the circumstances.
 
 F. Perjured Testimony
 
 23
 Finally, Beasley argues that his conviction violates due process because it was based on the alleged perjured testimony of his estranged wife, Connie. In support of that claim, Beasley has produced an affidavit, dated September 3, 1980, in which Connie recants her trial testimony and maintains that Beasley was acting in self-defense.
 
 
 24
 To establish a due process violation, the petitioner must demonstrate that the testimony was perjured and that the prosecution knowingly used perjured testimony during the trial. See Napue v. Illinois, 360 U.S. 264, 269 (1959); United States v. Baker, 850 F.2d 1365, 1371 (9th Cir.1985); United States v. Reynoso-Ulloa, 548 F.2d 1329, 1340 (9th Cir.1977); Marcella v. United States, 344 F.2d 876, 880 (9th Cir.1965). Beasley does not contend that the prosecution made intentional use of false testimony.
 
 
 25
 In addition, we agree with the district court that Connie's recantation merits little weight. Recantations by witnesses for the prosecution are traditionally viewed with "the utmost suspicion." United States v. Kearney, 682 F.2d 214, 219 (D.C.Cir.1982). There is no evidence in the record to support the claim that Connie's trial testimony was false. Her testimony was corroborated by other witnesses and by physical evidence, and the petitioner had a full opportunity to challenge the credibility of the testimony during cross-examination. His claim must therefore fail.
 
 
 26
 Accordingly, the district court's denial of habeas corpus relief is affirmed in all respects in which the court made findings and conclusions.
 
 
 27
 The case is remanded, however, for a decision on the procedural default claim which the district court mistakenly thought was precluded by the state supreme court's summary denial of relief. That claim remains undecided in the district court. AFFIRMED in part and REMANDED in part.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The prosecutor's cross-examination proceeded as follows:
 Q: After you were arrested did you press charges against her tell the police you wanted her arrested?
 A: No.
 Q: Is that because, Mr. Beasley, you were not assaulted on the evening of November 17th, you in fact shot Mrs. Beasley and shot Mr. Trailor?
 A: That is not true.
 Q: Can you tell the ladies and gentlemen sitting in judgment of you, why if you were kidnapped, forcibly taken to Mrs. Beasley's apartment, brutally assaulted, shot at, why didn't you press charges against Mrs. Beasley?
 A: I just didn't Mr. Munson.
 Q: As a matter of fact you never told the police, or District Attorney, anything about being assaulted, about being shot at, or about being kidnapped, did you?