Filed 7/21/21; Certified for Publication 8/11/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re KAREN LEE SIMS

    on Habeas Corpus.

E075363

(Super.Ct.No. BLF003752)

OPINION

_____

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus. Richard A. Erwood, Judge. Petition granted**.**

Michaela R. Dalton for Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Respondent.

Petitioner Karen Sims, a former attorney with serious mental illness of long standing, was convicted of murdering her husband Henry Sims in 2006 and was sentenced to prison for a term of 50 years to life. After her conviction and sentence were affirmed on direct appeal in 2008, she petitioned for a writ of habeas corpus in the

California Supreme Court in 2011, on the ground her conviction was invalid because she was incompetent to stand trial. An order to show cause (OSC) was issued by the Supreme Court, returnable in the Riverside County Superior Court, but was denied.

In 2016, petitioner filed another petition for writ of habeas corpus in the Supreme Court on the same ground, with additional information about her postconviction mental health problems as they related to timeliness. The California Supreme Court again issued an OSC, this time returnable to this court. We granted the petition and remanded the matter again to the superior court for an evidentiary hearing, where we specified that counsel should present the testimony of Mr. Michael DeFrank, as well as any expert witnesses or mental health professionals who were aware of defendant's mental health condition during the period between August and December 2006, or such other evidence as may constitute substantial evidence of defendant's incompetence to stand trial. (*In re Sims on Habeas Corpus* (2018) 27 Cal.App.5th 197.) On remand, the court heard the testimony of petitioner's trial counsel, which it found lacking in credibility, and that of petitioner, and denied the petition once again. This petition followed.

Respondent, the People, argue that the court properly found the testimony of petitioner's trial counsel lacked credibility and asserts that our previous remand order did not require the superior court to readdress petitioner's claim that she was incompetent to stand trial. We grant the petition.

## BACKGROUND

We take the factual and procedural history from our previous opinion, *In re Sims,*
*supra,* 27 Cal.App.5th at pages 200-203, which, in turn, incorporated information from
this court's opinion in the direct appeal. (*People v. Sims* (Nov. 17, 2008, E042064)
[nonpub. opn.].)

"Defendant has a history of mental illness that includes at least one prior
hospitalization lasting two years and had manifested itself in violent knife assaults against
her husband and her daughter while the family lived in Colorado. After being released
from an extended psychiatric hospitalization in Colorado, the family moved to California
where defendant practiced immigration law.

"In 2005, when defendant's daughter was home from medical school for the
summer, defendant behaved combatively and secretively, refusing to take her medication.
She was suspicious of conspiracies, convinced that she was God's daughter fighting
demons, or the daughter of an alien fighting some sort of intergalactic war on earth. She
accused her husband of adultery, occult practices, and devil worship. Defendant also
accused her husband of carrying on with prostitutes and drugging her at night. She also
behaved erratically with her office staff and clients, and sometimes missed court
appearances.

"Things came to a head in September 2005, when there was an incident at Lake
Evans in Riverside. After the incident, defendant and her husband drove to Blythe,
where defendant shot her husband several times, killing him. A complaint was filed,

3

charging defendant with murder and two firearm enhancements. [Citation.]" (*In re Sims, supra*, 27 Cal.App.5th at p. 200.)

"On September 29, 2005, the trial court appointed a medical examiner, Dr. Kania, to evaluate defendant, based upon her first appointed counsel declaring a doubt as to her competence. The evaluation, dated November 29, 2005, concluded that defendant was delusional and suffering from either schizoaffective or bipolar disorder, but that she was able to understand the nature of the proceedings and was able to cooperate with the examiner in a rational manner." (*In re Sims, supra,* 27 Cal.App.5th at pp. 200-201.)

"Dr. Kania noted that defendant did not trust her attorney based on her belief that counsel thought she was "crazy," which could interfere with her willingness to cooperate with counsel, but volunteered that it might not affect her ability to cooperate with another attorney. He concluded she was competent to stand trial but cautioned that her condition could deteriorate if she continued to decline medication. The trial court found defendant competent to stand trial.

"In May 2006, defendant retained Attorney Michael DeFrank to represent her. On or about August 9, 2006, defendant made a motion to represent herself pursuant to *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed. 2d 562, 95 S.Ct. 2525] because she objected to her attorney's in limine motion to exclude her statements to police. The motion, styled as a motion to exclude her confession, was objectionable to defendant because, while defendant admitted she discussed shooting her husband with investigators, she denied it was a 'confession.'

4

"Thereafter, Mr. DeFrank was designated advisory counsel, and defendant withdrew in limine motions to exclude her confession and opposed admission of prior similar acts pursuant to Evidence Code, section 1101, subdivision (b). The two prior acts related to a 1992 butcher knife attack on her husband and a 1995 incident in which defendant stabbed her daughter while having delusions about the 'Second Coming,' explaining she had to stab her daughter to insure the daughter would go to heaven immediately and not suffer." (*In re Sims, supra*, 27 Cal.App.5th at p. 201.)

"Defendant made bizarre statements during the hearing on her request to represent herself and during trial.[1] In her opening statement, she talked about the Greek word for devil, the biblical story of Jezebel, and described her 25 years of marriage as 'very colorful' and 'a lot of joy.' She denied killing her husband, asserted that he was alive when the coroner's photographs were taken, and proposed he was beaten and murdered by someone else while defendant was in custody. She cross-examined the pathologist about his experience with '[s]atanic ritual killings' and torture. Alternatively, she accused her husband of leading a double life, like Dr. Jekyll and Mr. Hyde, and claimed he was killed by friends and associates he had known for 15 years. Defendant's children testified that defendant became suspicious and delusional when not taking her medication." (*In re Sims, supra,* 27 Cal.App.5th at pp. 201-202.)

---

[1] The record is replete with bizarre statements by defendant. The fact we limit the number of her delusional statements here is not intended as a comment on the significance or relevance of other statements.

"According to his declaration [in support of the initial petition for writ of habeas corpus], Mr. DeFrank noticed that defendant's mental illness had been exacerbated by the stress of trial, and he attempted to inform the court on two separate occasions that he had a doubt as to her competence, but the court would not allow him to speak because he was advisory counsel only. On August 24, 2006, defendant accused Mr. DeFrank of conspiring with the deputy district attorney and relieved him of further advisory position." (*In re Sims, supra,* 27 Cal.App.5th at p. 202.)

"On August 28, 2006, defendant was found guilty of the murder of her husband (Pen. Code, § 187, subd. (a)), and the jury made true findings on the gun discharge and gun use allegations (Pen. Code, §§ 12022.5, subd. (a), 12022.53, subd. (d)). The following day, on August 29, 2006, in a case that had been trailing the murder charges, Mr. DeFrank, who represented defendant in the trailing matter, declared a doubt as to defendant's mental condition. Judge Erwood, [the same judge who presided over the homicide trial], suspended proceedings in that case. [However, petitioner refused to cooperate with a competence evaluation.] On October 25, 2006, Judge Erwood found defendant to be competent to stand trial in the trailing case, but defense counsel requested a trial on the issue, and that request was granted. On January 5, 2007, the People moved to dismiss the charges in the trailing case before the competency trial was conducted.

"Defendant appealed her murder conviction, raising evidentiary, instructional, and sentencing errors. At our request, the parties filed supplemental briefs on the issue of whether defendant was competent to represent herself pursuant to *Indiana v. Edwards*

6

(2008) 554 U.S. 164 [171 L.Ed. 2d 345, 128 S.Ct. 2379]. On November 17, 2008, we affirmed in full. On February 25, 2009, the Supreme Court denied review." (*In re Sims, supra,* 27 Cal.App.5th at p. 202.)

On April 12, 2010, defendant filed her first petition for writ of habeas corpus in the California Supreme Court, in propria persona. (*In re Sims*, S181881, Supreme Ct. Mins., Sept. 14, 2011.) Her petition was accompanied by the declaration of her advisory counsel and a copy of Dr. Kania's evaluation conducted in November 2005. In the declaration from petitioner's advisory counsel, Mr. DeFrank offered his observations of petitioner during her self-representation. He wrote that, due to his concerns, he had asked to speak with the judge about petitioner's competency, but was refused on the ground that he was only advisory counsel. (*In re Sims, supra*, 27 Cal.App.5th at pp. 202–203.)

"On September 14, 2011, the Supreme Court issued an OSC, returnable to the Riverside Superior Court. The People filed a return in the superior court on March 7, 2012, arguing that the petition was untimely, that the issue of defendant's competence to stand trial had been raised in the direct appeal, and there was substantial evidence to support the trial court's finding defendant was competent. The superior court denied the petition."

"On September 14, 2016, defendant filed her second petition for writ of habeas corpus in the California Supreme Court. After soliciting an informal response from the People, the Supreme Court issued an OSC why relief should not be granted, made returnable in this Court." (*In re Sims, supra,* 27 Cal.App.5th at p. 202.) In a published

7

opinion, "[w]e granted the petition, and remanded to the superior court to appoint counsel for defendant and hold an evidentiary hearing on whether there is substantial evidence of defendant's incompetence to stand trial between August and December 2006. (*Id.* at p. 211.) Specifically, we directed counsel to present the testimony of Mr. DeFrank, as well as any expert witnesses or mental health professionals who were aware of defendant's mental health condition during the period between August and December 2006, or such other evidence as may constitute substantial evidence of defendant's incompetence to stand trial." (*Ibid.*)

At the evidentiary hearing[2], that took place between September 6 and 12, 2020, petitioner's counsel presented the testimony of petitioner and Mr. DeFrank. Mr. DeFrank testified that he represented petitioner in two cases in 2006: The first involved the murder at issue and the second involved an assault on a peace officer. Judge Erwood had presided over both matters, and the assault case trailed the murder charge. In the murder proceeding, Mr. DeFrank asserted he attempted to inform the court of his doubt as to petitioner's competence in the murder case on two occasions after he had been relieved as counsel of record and was acting as advisory counsel: The first attempt was made during jury selection, when, during a recess and after petitioner had left the courtroom, he asked if he could speak with Judge Erwood about an issue. Judge Erwood relayed to counsel that he would not address Mr. DeFrank at that point because he was advisory counsel.

---

[2] At the inception of the hearing, the People informed the court that the purpose of the hearing was to decide whether Judge Erwood had prevented Mr. DeFrank from declaring a doubt as to petitioner's competence. This was incorrect.

8

Mr. DeFrank did not recall if he specifically mentioned petitioner's competency when he asked to speak with the judge, but that was his intent.

The second attempt to address the court about petitioner's competency took place towards the end of the prosecution's case. He became concerned when it appeared petitioner was not going to present any evidence in her defense, made a motion to dismiss the case based on the prosecution's "fraud," and had just completed an "essentially nonsensical" cross-examination of the coroner and the lead detective. He told the court clerk that he needed to speak with the judge about petitioner's competency. The clerk said she would let the judge know, left the courtroom, and returned a few minutes later to inform Mr. DeFrank that the judge would not meet with him because he was only advisory counsel. Mr. DeFrank did not put this request on the record because the court had made a similar ruling previously and it would be futile.

Meanwhile, after the verdict in the homicide matter, Mr. DeFrank made an appearance in petitioner's assault case, where he raised a doubt as to petitioner's competency on the record, before Judge Erwood. The judge ordered an evaluation but petitioner refused to be evaluated, so no report was prepared and the court found petitioner was competent. The prosecutor moved to dismiss the assault charges, and the court granted the motion over Mr. DeFrank's opposition.

On cross-examination, the prosecutor elicited that Mr. DeFrank's intent was to obtain a new trial for petitioner and mental health treatment. The prosecutor also impeached his testimony with the fact that, in 2008, he received a public reproval from

9

the State Bar, based upon a misdemeanor drunk driving conviction, for which he was required to fulfill certain conditions, but did not. He was subsequently disciplined by the State Bar in 2010 for not fulfilling those conditions. In 2011, he was disciplined again for not fulfilling those conditions. In 2014 or 2015, he stipulated to being disbarred for the same violation and failure to fulfill conditions. However, the disciplinary proceedings were initiated in November 2008[3], whereas the declaration he submitted regarding his attempts to discuss petitioner's deteriorating mental state was signed in July 2008.

Petitioner also testified at the hearing; she stated she was present in court when Mr. DeFrank first expressed a doubt as to her competence, but she did not recall the second attempt although she indicated she was present in the courtroom, contrary to Mr. DeFrank's testimony.

The trial court found that Mr. DeFrank was biased because he had an "axe to grind" against the state, and his claims that he attempted to raise a doubt about petitioner's competency lacked credibility. The court also noted that petitioner had not presented any new evidence at the hearing of her incompetence to stand trial in 2006, although the court had refused to read the transcripts, and the petition included Dr.

---

[3] The drunk driving incident underlying the disciplinary proceedings occurred in 2007, and the discipline followed in 2008.

10

Kania's competence evaluation from 2006. Moreover, the People's return to the petition did not dispute that petitioner was delusional.[4]

## DISCUSSION

Respondent asserts in its return that the trial court correctly declined to give any weight to the testimony of petitioner's trial level advisory counsel because of his bias, and because petitioner, a person suffering from delusions of long standing, contradicted his testimony regarding the second attempt to express a doubt about petitioner's competence. Respondent asserts that the trial court's finding as to Mr. DeFrank's credibility was proper, and justified the denial of relief, in the absence of any other evidence that would raise a doubt as to petitioner's competence. We disagree.

A. Petitioner's Competency

This matter, comprising multiple petitions for writ of habeas corpus, centers on one thing: whether petitioner was competent to stand trial. Petitioner's advisory counsel asserted he doubted her competence during jury selection and after the verdict, attempted to inform the court of his doubt, but the court declined to address counsel because he was advisory only. What is not disputed is that in the then-concurrently trailing assault matter, where the same attorney was still the attorney of record for petitioner, he did

---

[4] Prior to hearing witness testimony, the People indicated they had no witness to proffer as a mental health expert. Additionally, Mr. DeFrank named the court clerk to whom he had made his request to speak with the judge, so the People could have called the clerk as a witness to impeach the testimony. Interestingly, although the purpose of the hearing was to memorialize counsel's attempts to inform the court of his doubt as to petitioner's competence, when asked at the evidentiary hearing what the clerk told him after relaying counsel's message to the judge, the prosecutor objected on hearsay grounds.

11

make an on-the-record assertion of his belief, but the trial court—the same judge who presided over the homicide trial—concluded petitioner was competent when she refused to cooperate with the competence evaluation. This, despite the earlier competency report that substantiated petitioner's diagnosis, acknowledged she was delusional, and warned that her mental state would deteriorate if she refused medication. Which she did. When counsel demanded a jury trial on the competence question in the pending assault case, the prosecutor dismissed that case.

After numerous attempts to litigate the question of whether the advisory counsel in the homicide case was prevented from expressing his doubt as to petitioner's competence, we remanded for an evidentiary hearing. At that hearing, years after the events in question, a new judge, acting as referee, heard the testimony of Mr. DeFrank, petitioner's advisory counsel, who affirmed the statements made in the declaration he provided in support of petitioner's initial petition for writ of habeas corpus.

The referee, however, refused to consider the transcripts of the trial (which had been summarized for convenience) and denied relief, limiting its review to the issue of whether Mr. DeFrank had been precluded from expressing his doubt as to petitioner's competence. The referee did not consider whether there was substantial evidence of petitioner's incompetence before the trial court in the homicide case or whether the failure to conduct competency proceedings pursuant to Penal Code section 1368 deprived petitioner of due process. We return to those questions here.

12

"'Under section 1368, if a "doubt arises in the mind of the judge" as to the defendant's mental competence, the judge must "state that doubt in the record" and solicit defense counsel's opinion on the matter.  [Citation.]  In such a case, "[i]f counsel informs the court that he believes the defendant is or may be mentally incompetent," the court must order a hearing.  [Citation.]'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1111-1112.)  "A trial court is required to conduct a competence hearing, sua sponte if necessary, whenever there is substantial evidence of mental incompetence." (*People v. Howard* (1992) 1 Cal.4th 1132, 1163 [abrogated on other grounds in *People v. Rhoades* (2019) 8 Cal.5th 393], citing *People v. Pennington* (1967) 66 Cal.2d 508, 518.)

Where the court does not declare a doubt, Penal Code section 1368 does not require the court to conduct a hearing based solely on counsel's opinion.  (*People v. Howard, supra,* 1 Cal.4th at p. 1164.)  Nevertheless, a hearing is required whenever there is substantial evidence of incompetence, whatever the source.  (*Ibid.*)  Whether or not attorney Mr. DeFrank attempted to bring to the court's attention the petitioner's deteriorating state is a red herring because whether or not counsel makes a formal, on-the-record expression of doubt is irrelevant:  it was for the trial court to express the doubt, based on substantial evidence of incompetence.

Here, the trial court presiding over the trial was well aware of petitioner's extensive mental health history, as well as familiar with the findings of Dr. Kania in connection with an earlier Penal Code section 1368 proceeding in the same matter, including Dr. Kania's admonishment about the likelihood she would become incompetent

13

if she refused to take her medication (which she did). The trial court, presiding over both the homicide case and the trailing assault matter, had observed firsthand the petitioner's ludicrous attempt at self-representation. The court was also aware that in a concurrently pending felony matter, the same attorney, who was still counsel of record for the petitioner in that matter, *did* express his doubt as to her competence, and, after the trial court found her competent, demanded a jury trial on the question. The court could not pretend to be unaware of the deteriorating state of petitioner's mental health.

The real question before us is not whether there was substantial evidence to support Mr. DeFrank's statement—both in his declaration in 2008 and at the hearing on the instant petition in 2020—that he attempted to initiate competency proceedings. The real question is whether petitioner's right to due process was violated by the trial court's refusal to initiate proceedings to determine her present competence where, as we have said, even to a casual observer, the manner in which defendant conducted her defense was not rational. (*In re Sims*, 27 Cal.App.5th at p. 209.)

Mr. DeFrank's statement regarding attempts to inform the court of his doubt as to petitioner's competence would be more relevant if petitioner had maintained a stoic presence during the trial, and had not behaved in a floridly delusional manner in trial, before both court and jury. (See *People v. Samuel* (1981) 29 Cal.3d 489, 503 ["[e]vidence that a defendant can obediently walk into the courtroom and sit quietly during the trial does not constitute substantial proof of competence"]; *People v. Sundberg* (1981) 124 Cal.App.3d 944, 956.) The trial court had its own observations to rely upon.

14

Nevertheless, before we address this question, we review the matters raised in the current writ petition vis-à-vis the conduct of the evidentiary hearing. In doing so, we follow well settled rules. "A habeas corpus petition is a collateral attack on a presumptively valid judgment, thus "'the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them.'"" (*In re Lewis* (2018) 4 Cal.5th 1185, 1191, quoting *In re Price* (2011) 51 Cal.4th 547, 559.) The standard of proof is preponderance of evidence. (*In re Cudjo* (1999) 20 Cal.4th 673, 687; see also *In re Bacigalupo* (2012) 55 Cal.4th 312, 333.) "Because the referee observes the demeanor of the witnesses as they testify, we generally defer to the referee's factual findings and 'give them great weight' [if supported by] substantial evidence." (*Bacigalupo*, at p. 333.) However, these findings are not binding. "Ultimately, this court must make the findings necessary to resolve petitioner's claim." (*In re Lewis, supra,* at p. 1191, citing *In re Thomas* (2006) 37 Cal.4th 1249, 1256–1257.)

The ultimate question in this case is whether substantial evidence of a change of circumstances in petitioner's mental condition had been established, requiring the trial court to suspend proceedings pursuant to Penal Code section 1368. "'When a judge's attention is called to the issue of incompetency or he suspects the possibility, then he has the duty to determine whether there is substantial evidence to require the full hearing. As to the nature of proof which is necessary in order to constitute the substantial evidence necessary to give rise to the constitutional right to a hearing on present sanity, the evidence must be such that he is incapable because of mental illness of understanding the

15

nature of the proceedings against him or of assisting in his defense.  And once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence may be.  Testimony of prosecution witness or of the court's own observation of the accused may be to the contrary, yet 'when the defendant comes forward with substantial evidence of present mental incompetence, he is entitled to a [Penal Code] section 1368 hearing as a matter of right.'  [Citation.]" (*People v. Sundberg, supra,* 124 Cal.App.3d at p. 955.)

"As a general rule, once a defendant has been found competent to stand trial, a trial court may rely on that finding absent a substantial change of circumstances." (*People v. Rodas* (2018) 6 Cal.5th 219, 223.)  "But when a formerly incompetent defendant has been restored to competence solely or primarily through administration of medication, evidence that the defendant is no longer taking his medication and is again exhibiting signs of incompetence will generally establish such a change in circumstances and will call for additional, formal investigation before trial may proceed." (*Ibid.*)

The conviction of an accused person while he is legally incompetent violates due process.  (Pen. Code, § 1367; *Pate v. Robinson* (1966) 383 U.S. 375, 378 [15 L.Ed.2d 815, 818, 86 S.Ct. 836]; *People v. Hale* (1988) 44 Cal.3d 531, 539; *People v. Laudermilk* (1967) 67 Cal.2d 272, 282.)  The error is jurisdictional in the sense the court lacks the power to render judgment in such a case.  (*People v. Laudermilk, supra*, 67 Cal.2d at p. 282; *People v. Sundberg, supra*, 124 Cal.App.3d 944, 956.)

Here, petitioner previously had been evaluated to determine her competency in the early stages of the homicide prosecution. Dr. Kania confirmed her psychiatric diagnosis and actually concluded at that time that petitioner was unable to cooperate with her defense attorney. (*In re Sims, supra,* 27 Cal.App.5th at pp. 200-201.) Yet he concluded she was competent then because she was able to cooperate with him, the examiner, and speculated that she might be able to cooperate with another attorney. (*Id.* at p. 201.) By itself, this statement somewhat undermines Dr. Kania's ultimate conclusion that she met the "minimum legal criteria" to stand trial, where the report confirmed she was unable to assist trial counsel in the conduct of a defense in a rational manner. (Pen. Code, § 1369, subd. (a)(2).) It is undisputed that the defense she proffered acting as her own counsel was not rational.

Nevertheless, Dr. Kania expressly cautioned that he had "concerns that her condition may deteriorate now that she is no longer taking her medication in the jail" and that "[s]hould her condition deteriorate, it is quite likely that she would become not trial competent." As predicted, her mental condition continued to deteriorate and dissemble in front of the entire courtroom, in a manner that is even apparent from a cold appellate record.

The petition alleged that around the time the verdict was reached in the homicide case, advisory counsel, Mr. DeFrank, attempted to inform the court of his doubt as to her present competence for the second time. He testified that in the homicide case, the trial court refused to address him directly because he was not attorney of record. He also

17

testified that at the same time, in the trailing assault case, where he was still attorney of record, he did put his doubt on the record and the trial court summarily determined petitioner was competent. In our prior opinion, we were concerned that the refusal to address Mr. DeFrank violated petitioner's due process rights.

But the issue seems to have taken on a life of its own and this writ proceeding has strayed from being a question of whether the trial court was presented with substantial evidence that petitioner was incompetent to a question involving her advisory counsel's motives and bias. In our prior decision, we stated, "The critical question posed in the petition—the question which no doubt caused our Supreme Court to twice issue an OSC—is *whether the trial court erred in not suspending proceedings for further examination of defendant's competence to stand trial, based on her decompensated mental condition.* This issue is not barred by our prior appeal, because it grounded on information outside the appellate record (the declaration of Mr. DeFrank) relating to events that occurred after the court granted defendant's *Faretta* motion." (*In re Sims, supra,* 27 Cal.App.5th at p. 207.)

We return to that central question after addressing questions posed in the Return.

1.      *Credibility of Mr. DeFrank's Testimony.*

Petitioner argues that at the evidentiary hearing, the court improperly found Mr. DeFrank's testimony to be not credible. The hearing judge found Mr. DeFrank had a motivation for bias against the State of California, based on his disbarment by the State Bar of California. The hearing judge considered records of the disciplinary proceedings

18

showing Mr. DeFrank failed to comply with conditions requiring him to submit to discipline and drug and alcohol testing. Ultimately, in April 2015, he was disbarred following an October 2014 stipulation to that effect.

The abuse of discretion test applies when a judicial determination concerns the admissibility of evidence. (*People v. Rowland* (1992) 4 Cal.4th 238, 264.) It is the province of the trier of fact to make credibility determinations respecting witness testimony, and we are precluded from reweighing credibility. "'We do not reweigh evidence or reevaluate a witness's credibility.'" (*People v. Houston* (2012) 54 Cal.4th 1186, 1215, citing *People v. Guerra* (2006) 37 Cal.4th 1067, 1129, overruled on a different point in *People v. Rundle* (2008) 43 Cal.4th 76, 141.)

The information about the disbarment proceedings offered to impeach Mr. DeFrank may have been intended to discredit his testimony at the hearing, but that testimony merely repeated what he stated in his declaration in July 2008, before any disciplinary proceedings were undertaken. No attempt was made to impeach or refute the statements in the declaration, which are corroborated by circumstantial evidence of Mr. DeFrank's concurrent statement of doubt, made on the record, as to petitioner's competence, in the trailing assault case.

The only contradiction of the statement case was through the testimony of the petitioner, who testified she was present in the courtroom on that occasion (at a time Mr. DeFrank testified she had been escorted from the courtroom) and did not hear Mr. DeFrank make a request to speak to the judge. This statement, by a petitioner with a long

history of delusions, does not undermine the declaration Mr. DeFrank made in his original declaration.

Thus, even if we concluded that Mr. DeFrank's testimony at the hearing was impeached, this conclusion would not undermine the statements made under oath in the declaration, and, most significantly could not operate to relieve the trial court from considering petitioner's behavior in the courtroom, which it had observed first hand. Coupled with the knowledge she was not taking medication, petitioner's behavior and irrational defense at her trial was substantial evidence of changed circumstances requiring further evaluation of her competence, even without any expression of doubt by her advisory counsel.

Petitioner also refers to Mr. DeFrank's expression of doubt as to petitioner's competence before the initiation of any disciplinary proceedings by raising the issue in the trailing assault case. This is undisputed. Mr. DeFrank *did* express a doubt as to petitioner's competence *on the record* and before any of the events that could color his motives or bias had occurred. The verifiable information about Mr. DeFrank's expression of doubt as to petitioner's competence in the pending assault case actually corroborates his statement in the declaration—as well as at the evidentiary hearing—that he attempted to express a doubt as to her competence.

Further, the significance of the People's decision to dismiss that assault case rather than go through a competence trial, as Mr. DeFrank had demanded on petitioner's behalf when the trial court found petitioner was competent, is not lost on us. Suspending

20

proceedings in the assault case would mean automatic suspension of proceedings in the homicide case, and risking a retrial of the homicide charge, unless it could be said that petitioner was competent in one case, but not in the concurrently pending case.

We have previously noted that even to a casual observer, the manner in which defendant conducted her defense was not rational. (*In re Sims*, 27 Cal.App.5th at p. 209.) It was for the court to raise a doubt as to petitioner's competence, even without input from counsel. (*People v. Howard, supra,* 1 Cal.4th at p. 1164.) The trial court's finding that petitioner was competent in the trailing assault case was not supported by substantial evidence, given the court's awareness of her bizarre conduct in the homicide trial, and its duty to declare a doubt as to competence cannot be delegated to advisory counsel. Penal Code section 1368 compels a trial court to suspend proceedings whenever a doubt as to competence arises. It does not excuse a court's failure to do so because advisory counsel has not expressed a doubt on the record.

Petitioner next contends that Judge White improperly considered some of Mr. DeFrank's testimony as speculative. "He speculated on various occasions as to the defendant's motivation in several areas of his testimony." The abuse of discretion test applies when a judicial determination concerns the admissibility of evidence. (*People v. Rowland* (1992) 4 Cal.4th 238, 264.) But it is really irrelevant what Mr. DeFrank's interpretation of petitioner's behavior was, speculative or not, for two reasons: First, Penal Code section 1368 contemplates that counsel will express a doubt based on observations, which evoke a "belief" that his or her client is incompetent. The statute

therefore expressly contemplates subjective belief. Second, the record of the appeal, including the litany of bizarre assertions and motions by petitioner, speak for themselves; a trial judge witnessing petitioner's performance in her own defense had a duty to intervene to protect her right to a fair trial. At an evidentiary hearing, where a referee has refused to burden itself with reviewing the record, a determination that counsel's testimony is speculative is not supported by substantial evidence.

Moreover, Mr. DeFrank's testimony as to his observations (petitioner decided not to "dress out" during trial [i.e., wore prison clothing]; had pictures of cats at her seat; and that she objected to the characterization of her statements to the police as a "'confession'") were not speculation, although his subjective conclusion from these observations may have been opinion giving rise to his belief she was incompetent. Mr. DeFrank did not claim to have any actual knowledge of petitioner's motivations in these instances, only that he apparently found them indicative of her mental state. These observations were made in open court for all to see and Penal Code section 1368 expressly provides for counsel to relay this information to the court.

To give counsel's testimony little weight as "speculative" misses the point of competency proceedings. It is the obligation of the court to suspend proceedings pursuant to Penal Code section 1368 if the court doubts the defendant's competence. Counsel has no obligation to bring the issue to the court's attention, although frequently that is the means by which the court becomes aware of circumstances that would give rise to a doubt, especially in the case of a stoic defendant. But where the defendant acts as

22

her own attorney, and the court is sitting ringside in what is devolving into a circus, the court cannot simply ignore its own observations, and avoid responsibility for depriving a defendant of a fair trial.

Judge Erwood had knowledge that defendant was not taking medication for her mental illness of longstanding and knew that her mental state would deteriorate. Seeing first-hand the irrational defense she presented and other conduct in the courtroom (such as her statements that the People had not proven her husband was dead, that the bodies had been switched, etc.), the court was aware of changed circumstances giving rise to a doubt as to her competence. The court had a duty to insure petitioner's right to a fair trial.

Thus, even if we completely reject Mr. DeFrank's testimony at the 2020 evidentiary hearing, we cannot ignore the fact that the trial judge to whom Mr. DeFrank attempted to express his doubt was present throughout the trial and observed for himself her irrational defense. Seemingly a judge presiding over a lengthy trial and a trailing companion case, aware of petitioner's diagnoses and previous commitment pursuant to Penal Code section 1368, in addition to her previous hospitalization, should not have shut his eyes to her deteriorating condition. Notwithstanding any finding as to Mr. DeFrank's credibility, there was substantial evidence of changed circumstances as to petitioner's competency giving rise to an affirmative duty on the part of the trial judge to express a doubt as to her competence, with or without an expression of doubt by advisory counsel.

23

Altogether, the referee Judge White found, "There was no evidence in the record at all that as advisory counsel Mr. DeFrank declared a doubt as to the competency of the defendant during the course of the jury trial." We are not bound by this finding. Further, Judge White noted there was no testimony from anyone else, including the trial judge, the clerk or other third parties, preventing the court from making a "finding that there was any other evidence that was presented that may constitute substantial evidence of the defendant's incompetence to stand trial . . . ." While petitioner's counsel called the two witnesses, the prosecutor opted to call none to refute Mr. DeFrank's statements in the declaration. Nevertheless, the original petition that gave rise to the OSC included Dr. Kania's report, and counsel provided a factual summary of evidence from the trial record that supported a determination that petitioner's competence had deteriorated. In determining that evidence does not exist to show that advisory counsel Mr. DeFrank made such an attempt, the referee ignored the fact counsel's declaration did not suffer from the same impeachment and that the testimony corroborated a prior consistent statement. The referee also ignored other objective evidence of her incompetence.

2.      *Entitlement to Relief on the Trial Record.*

Petitioner contends that even if Mr. DeFrank's testimony was properly disregarded, the trial record itself entitles her to relief. As pointed out herein, our direction to the superior court on remand from *In re Sims, supra,* included considering not just whether Mr. DeFrank had attempted to declare a doubt as to petitioner's

24

competency, but any other substantial evidence of defendant's incompetence to stand trial.

We therefore return to the question of whether there was substantial evidence of petitioner's incompetence on the record. "'Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused.'" (*People v. McKenzie* (1983) 34 Cal.3d 616, 626 [overruled on a different point in *People v. Crayton* (2002) 28 Cal.4th 346, 365], quoting *Glasser v. United States* (1942) 315 U.S. 60, 71 [86 L.Ed. 680, 699, 62 S.Ct. 457].) In fact, even in situations where the trial court confronts ineffective representation of an accused by counsel, "a trial court has a duty to remove counsel even over the defendant's objection where other measures have failed, in cases of "'obviously deficient performance,'" such as when counsel refuses to participate in the trial. [Citation.]" (*People v. Woodruff* (2018) 5 Cal.5th 697, 729.)

Likewise, when confronted by a self-represented defendant presenting an irrational defense and behaving in a manner consistent with a person whose competence is doubtworthy, especially where the court has been advised that defendant would become incompetent if she continued to refuse medication, the trial court had an affirmative duty to step in and appoint counsel, or to suspend proceedings for a competency evaluation based on its own observations, lest the judgment be reversed.

Even disregarding whether evidence supported Mr. DeFrank's claim he attempted to alert the trial court to petitioner's declining competency, adequate evidence existed before the trial judge and on the trial record to support a finding, during trial, that

petitioner was incompetent. In fact, this court cited the primary controlling case, *People v. Murdoch* (2011) 194 Cal.App.4th 230 (*Murdoch*), at length, along with record evidence in *In re Sims, supra,* before remanding to the superior court for an evidentiary hearing. The superior court appears to have ignored the case, as well as a more recent case by our Supreme Court, *People v. Rodas*, *supra,* 6 Cal.5th 219, and declined to address the analysis of either precedent when invited to do so on the record by appointed counsel.

The standard of competence to stand trial is well established: "A defendant is competent to stand trial if he or she is able to understand the nature of the proceedings taken against him or her and to assist counsel in the conduct of a defense in a rational manner. [Citation.] Where the defendant is representing himself or herself, the standard of competence is the same: whether the defendant '"is able to understand the nature and purpose of the proceedings taken against him and to conduct his own defense in a rational manner."' [Citation.]" (*In re Sims*, *supra*, 27 Cal.App.5th at p. 208.) "'"Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations."' [Citations.]" (*Ibid.*) We went on to note that "[t]he statutory scheme does not require that the evidence of incompetence be presented to the court by means of any particular individual or through any particular channel. Thus, advisory counsel should be permitted to declare a doubt as to his or her client's competence. [Citation.]" (*Ibid.*) What we did not address at that time was

whether there was substantial evidence of petitioner's incompetence to compel the trial court, sua sponte, to express a doubt.

In *Murdoch*, "the reviewing court based its decision on '"all the relevant facts in the record."'" (*Murdoch*, *supra*, 194 Cal.App.4th at p. 238)  That record included evidence of defendant's long history of severe mental illness and the court's knowledge of the fact that the defendant had discontinued his medication, which would make him decompensate.  (*Ibid*)  Those are almost the identical circumstances present here, as we recognized in *In re Sims, supra*, where we stated that "the judge was aware of defendant's long history of severe mental illness, the fact she was not compliant with her medication, and that Dr. Kania [the examining medical expert] had predicted this would make her decompensate.  Additionally, the court was confronted with objectively observable evidence of defendant's bizarre legal defense and heard her statements in open court.  Even to a casual observer, the manner in which defendant conducted her defense was not rational."  (*In re Sims*, *supra*, 27 Cal.App.5th at p. 209.)

In *Rodas,* the California Supreme Court adopted the same reasoning, declaring, "[b]ut when a formerly incompetent defendant has been restored to competence solely or primarily through administration of medication, evidence that the defendant is no longer taking his medication and is again exhibiting signs of incompetence will generally establish such a change in circumstances and will call for additional, formal investigation before trial may proceed.  In the face of such evidence, a trial court's failure to suspend proceedings violates the constitutional guarantee of due process in criminal trials.

[Citation.]" (*People v. Rodas, supra*, 6 Cal.5th at p. 223.)  There, at least, the trial court asked the defendant how he was feeling when counsel expressed a doubt as to his competence, something the trial judge in the present case did not, despite the bizarre defense proffered by petitioner.  Not so in the present case.

In *Rodas*, the court discussed the court's duty in light of conflicting evidence on the question of competence:  "When faced with conflicting evidence regarding competence, the trial court's role under Penal Code section 1368 is only to decide whether the evidence of incompetence is substantial, not to resolve the conflict. Resolution must await expert examination and the opportunity for a full evidentiary hearing.  [Citation.]  Had the issue of defendant's competence been tried to the court under Penal Code section 1369, the trial court might legitimately have weighed defendant's demeanor and the nature of his responses to the court's questioning against the experts' reports and other available evidence relating to his condition.  But in the face of substantial evidence raising a doubt about defendant's competence, defendant's demeanor and responses supplied no basis for dispensing with further inquiry."  (*People v. Rodas, supra,* 6 Cal.5th at p. 234.)

The Supreme Court also noted that that the duty to suspend is not triggered by information that substantially duplicates evidence already considered at an earlier, formal inquiry into the defendant's competence, and that when faced with evidence of relatively minor changes in the defendant's mental state, the court may rely on a prior competency finding rather than convening a new hearing to cover largely the same ground.  (*People v.*

28

*Rodas, supra,* 6 Cal.5th at pp. 234-235.)  In this respect, the court agreed that when a defendant has already been found competent to stand trial, "'a trial court need not suspend proceedings to conduct a second competency hearing unless it "is presented with a substantial change of circumstances or with new evidence" casting a serious doubt on the validity of that finding.'"  (*Id.* at p. 234, quoting *People Jones* (1991) 53 Cal.3d 1115, 1153.)

Here, there were more than "minor changes" in petitioner's mental state; there was substantial evidence as to her incompetence and inability to conduct a rational defense. When substantial evidence demonstrates a reasonable doubt as to a defendant's competence and the trial court erred in not conducting a hearing to determine his competence, the correct procedure is to reverse the judgment of conviction rather than conduct a retrospective competency hearing test.  (*Murdoch, supra*, 194 Cal.App.4th at p. 239; see also, *People v. Rodas, supra,* 6 Cal.5th at pp. 239-241 [discussing the inadequacy of retrospective competency proceedings in many circumstances].)  That is the only appropriate course left, in light of the referee's failure to consider the trial record or Dr. Kania's report in the evidentiary hearing.

Petitioner established changed circumstances affecting her competence both to represent herself and to stand trial, of which the trial court was or should have been aware and the referee should have considered.  Even if Mr. DeFrank did not, as he testified in the evidentiary hearing, attempt to express a doubt as to her competence in the homicide case, he most certainly made a contemporaneous expression of doubt in the trailing

assault case *before the same judge.*  Combined with the court's own observations, and the knowledge she was not taking medication, there was evidence of substantially changed circumstances.

The trial court was therefore aware of changed circumstances raising a doubt as to petitioner's competence creating a situation in which she was convicted and sentenced while incompetent.  This was not a situation in which the court could consider petitioner a malingerer who might be trying to infuse the proceedings with reversible error.  Instead, the trial court had knowledge of her mental illness, as well as the fact she refused to take medication, and that these circumstances would lead to her incompetence.  The failure to suspend proceedings for an evaluation of her competency was a violation of her due process rights.  (*People v. Rodas, supra*, 6 Cal.5th at p. 223.)

## DISPOSITION

We grant the petition and reverse the judgment of conviction.  Defendant may be retried on the charges for which she was convicted if she is presently competent to stand trial.

RAMIREZ           
P. J.


We concur:

MILLER        
          J.

McKINSTER      
          J.

30

Filed 8/11/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| In re KAREN LEE SIMS<br><br>    on Habeas Corpus. | E075363<br><br>(Super.Ct.No. BLF003752)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT

The opinion in the above-entitled matter, filed on July 21, 2021, was not certified for publication in the Official Reports.

A request has been made, pursuant to California Rules of Court, rule 8.1120(a), for publication of the opinion. It appears that the opinion does meet the standard for publication as specified in California Rules of Court, rule 8.1105(c).

We therefore GRANT the request and ORDER that the opinion is certified for publication.

CERTIFIED FOR PUBLICATION

RAMIREZ          
P. J.

We concur:

McKINSTER      
      J.

MILLER         
      J.

1